THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARIA AGNE, on her own behalf and on behalf of other similarly situated persons, <br><br> Plaintiff, <br><br> v. <br><br> PAPA JOHN'S INTERNATIONAL, INC., a Delaware corporation; PAPA JOHN'S USA, INC., a Kentucky corporation; RAIN CITY PIZZA, L.L.C., an unknown business entity; EDWARD TALIAFERRO, individually and d/b/a RAIN CITY PIZZA, L.L.C., GREAT WESTERN DINING, and ROSE CITY PIZZA, L.L.C.; KEVIN SONNEBORN, individually and d/b/a RAIN CITY PIZZA, L.L.C., GREAT WESTERN DINING, ROSE CITY PIZZA, L.L.C., SEATTLE PJ PIZZA, L.L.C., PJ SOUND PIZZA, L.L.C., PAPA WASHINGTON, L.L.C., and PAPA WASHINGTON II, L.L.C.; ROSE CITY PIZZA, L.L.C., an Oregon limited liability company; SEATTLE PJ PIZZA, L.L.C., a Washington limited liability company; PJ SOUND PIZZA, L.L.C., a Kansas limited liability company; PAPA WASHINGTON, L.L.C., a Washington limited liability company; PAPA WASHINGTON II, L.L.C., an unknown business entity; ON TIME 4 U, L.L.C., an unknown business entity; ROBERT WISNOVSKY, individually and d/b/a ON TIME 4 U, L.L.C.; JOHN S. GEORGE, individually and d/b/a ON TIME 4 U, L.L.C.; and JTF ENTERPRISES, INC., a Florida corporation, <br><br> Defendants. | Case No. 2:10-cv-01139-JCC <br><br> **PLAINTIFF'S MOTION REQUESTING CLASS CERTIFICATION** <br><br> NOTE ON MOTION CALENDAR: APRIL 27, 2012 <br><br> (RESPONSES DUE IN 60 DAYS PER COURT ORDER) |

PLAINTIFF'S MOTION TO CERTIFY
(Case No. 2:10-cv-01139-JCC)

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington 98101
(206) 838-2504

# Table of Contents

I.   INTRODUCTION ................................................................................................ 1

II.  RELIEF REQUESTED ...................................................................................... 2

III. STATEMENT OF FACTS ................................................................................ 3

   A.  Through Its Vendor OnTime4U, Papa John's Sent Ms. Agne and Class Members
      Unsolicited Text Messages Without Prior Express Consent ............................... 3

   B.  Papa John's and OnTime4U's Self-Described ILLEGAL Practice and Process Impacted
      Tens to Hundreds of Thousands of its Customers ............................................. 5

   C.  OnTime4U Used an Automated Dialing System to Spam its Customers ........................ 7

IV.  STATEMENT OF ISSUES ............................................................................... 8

V.   EVIDENCE RELIED UPON ............................................................................ 8

VI.  ARGUMENT ..................................................................................................... 8

   A.  The Policy Behind Rule 23 Requires Certification in This Case to Protect the Interest of
      Justice and the Rights of the Class ............................................................... 8

   B.  Under Rule 23, Certification is Based on the Facts and Legal Theory as Pled Without
      Consideration of the Merits ...................................................................... 10

   C.  Plaintiffs Meet Each of Four Requirements of Rule 23(a) ................................. 11

      1.   Defendants' widespread illegal marketing campaign satisfies numerosity. ............... 12

      2.   Common questions of fact and law dominate Plaintiff's class claims due to Papa
          John's uniform illegal marketing campaign. ............................................ 13

      3.   Ms. Agne's claims are typical of the class and no conflict exists.............................. 15

      4.   The class is adequately represented by both Ms. Agne and class counsel. ................ 16

   D.  A Class Action is Maintainable Under Both Rule 23(b)(3) and, Alternatively, Under Rule
      23(b)(2) ........................................................................................... 17

      1.   Class certification is maintainable under Rule 23(b)(3) because common questions
          predominate over individual inquiries and the class mechanism is superior to
          thousands of individual cases.................................................................. 17

   E.  Class Certification is Alternatively Maintainable Under Rule 23(b)(2) Because Plaintiff
      Equally Seeks Injunctive Relief to Stop all Future Violations of the Law ...................... 22

VII. CONCLUSION................................................................................................ 24

PLAINTIFF'S MOTION TO CERTIFY
  (Case No. 2:10-cv-01139-JCC)

**HEYRICH KALISH MCGUIGAN PLLC**
1325 Fourth Avenue, Suite 540
Seattle, Washington 98101
(206) 838-2504

ii

# Table of Authorities

**Cases**

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997) ............................................... 18

*Armstrong v. Davis,* 275 F.3d 849, 868-69 (9th Cir. 2001) ............................................ 16

*Arthur v. Sallie Mae, Inc.,* No. C10-0198JLR, 2012 WL 90101 (W.D. Wash Jan. 10, 2012) ........
.............................................................................................................................14, 19, 20

*Blackie v. Barrack,* 524 F.2d 891, 901 n.17 (9th Cir. 1975) ......................................... 10

*Catholic Soc. Services, Inc. v. I.N.S.*, 232 F.3d 1139, 1153 (9th Cir. 2000) .................... 9

*Critchfield Physical Therapy v. Taranto Group, Inc.,* 263 P.3d 767, 780 (Kan. 2011) ............... 9

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54 (D. Mass. 1997) ..................... 21

*Dukes v. Wal-Mart Stores, Inc.,* 603 F.3d 571, 582 (9th Cir. 2010) ................................. 17

*Durrett v. John Deere Co.*, 150 F.R.D. 555, 558 (N.D. Tex. 1993) ................................. 15

*Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968) ....................................................... 9

*Freedman v. Louisiana Pacific Corp.*, 922 F. Supp. 377, 398 (D. Or. 1996)............................ 10

*Grannan v. Alliant Law Group, P.C.*, No. C10-02803 HRL, 2012 WL 216522 (N.D. Cal. Jan. 24, 2012) ...................................................................................................................... 19

*Gulf Oil Co. v. Barnard, 452* U.S. 89, 99 (1981)........................................................... 8

*In re Cement and Concrete Antitrust Litig.,* 27 Fed.R. Serv.2d 1334 (D. Ariz. 1979)................ 21

*In re Washington Mut. Mortgage-Backed Sec. Litig.,* 276 F.R.D. 658, 668 (W.D. Wash. 2011) 21

*Irwin v. Mascott*, 96 F. Supp. 2d 968, 971-72 (N.D. Cal. 1999) ...................................... 11

*Jordan v. County of Los Angeles,* 669 F.2d 1311, 1320 (9th Cir. 1982) ......................... 12

*Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D. Wash. 2007) ......................... passim

*Kelley v. Microsoft Corp.,* 395 F. App'x 431, 432 (9th Cir. 2010) .................................... 15

*Lo v. Oxnard European Motors, LLC,* No. 11CV1009 JLS MDD, 2011 WL 6300050 (S.D. Cal. Dec. 15, 2011)................................................................................... 13, 16, 20

*McClintic v. Lithia Motors, Inc.,* No. C11-859RAJ, 2012 WL 112211 (W.D. Wash. Jan. 12, 2012) .......................................................................................................... 14, 19

*Mortimore v. F.D.I.C.*, 197 F.R.D. 432, 438 (W.D. Wash. 2000)........................................ 18, 22

*Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 598 (2d Cir. 1986)................................ 18

*S. Ferry LP No. 2 v. Killinger,* 271 F.R.D. 653, 657 (W.D. Wash. 2011)........................ 11

*Sax v. World Wide Press, Inc.*, 809 F.2d 610, 615 (9th Cir. 1987) ................................. 9

*Scott v. Cingular Wireless*, 160 Wn.2d 843, 857, 161 P.3d 1000, 1007 (2007) ............ 8

*See United Steel v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010)........................ 10, 17

*Slaven v. BP America, Inc.,* 190 F.R.D. 649 (C.D. Ca. 2000) ...................................... 12

*Sollenbarger  v. Mountain States Tel. and Tel. Co*., 121 F.R.D. 417 (D.N.M. 1988) ................ 21

*Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003)............................................... 16

*Targin Sign Sys., Inc. v. Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894, 898-99 (N.D. Ill. 2010) ...................................................................................................... 20

*Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2557, 180 L. Ed. 2d 374 (2011) ................. 23

*Wang v. Chinese Daily News, Inc.,* 623 F.3d 743, 754 (9th Cir. 2010) *cert. granted, judgment vacated,* 132 S. Ct. 74 (2011).............................................................................. 23

*Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1174 (9th Cir. 2010)........................ 18

**Statutes**

RCW 19.190.060 ................................................................................................ 2, 15

RCW 19.86.10 .......................................................................................................... 2

U.S.C. § 227 ............................................................................................................ 2

1

**Rules**

Fed. R. Civ. P. 23 ........................................................................... passim

2

**Treatises**

5 Moore's Federal Practice & Procedure § 23.46[4] (3d ed.)..................................................... 10
Newberg & Conte, Newberg on Class Action § 7.20 (4th ed. 2002) ............................. 11, 12, 17
7A Wright & Miller, Federal Practice and Procedure § 1764 ..................................... 16

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S MOTION TO CERTIFY
 (Case No. 2:10-cv-01139-JCC)

# I. INTRODUCTION

Plaintiff Maria Agne, on her own behalf and on behalf of all other similarly situated persons (collectively "Plaintiffs"), brings this motion to certify under Fed. R. Civ. P. 23, for all consumers who were sent unsolicited text messages by the above-captioned defendants ("Defendants") in violation of the Telephone Consumer Protection Act ("TCPA") and Washington State's Consumer Protection Act ("WCPA").

Actions brought under the TCPA epitomize the policies behind Rule 23 certification. This is clear from the fact that this Court has certified every TCPA case that has come before it. This case is no exception. Judicial economy, uniformity of claims, uniformity of facts, and the tens of thousands of harmed consumers, makes certification necessary. Here, Defendants' own internal memoranda describe their "practice and process of sending UNSOLICITED [text messages] to mobile devices." *Kirby Decl.* Ex. 13, Oct. 19, 2011, ECF No. 153. This practice and process led to the direct transmission of tens to hundreds of thousands of unsolicited text messages to consumers nationwide. These messages were sent without the prior consent of the consumers and without regard to the clear protections Congress has explicitly provided them under the TCPA.

Initiating many thousands of separate lawsuits would prove unwieldy and inefficient, overburdening the court system and leading to inconsistent adjudications of the same issues of law and fact. As this Court has recognized in three previous decisions certifying similar claims under the TCPA and WCPA, the Plaintiffs' claims are easy to administer, the issues of law and fact are straightforward and virtually identical. Moreover, Rule 23 ensures that the low value of the individual recovery involved does not become a bar for consumers seeking relief under the TCPA. Because the controversy stems from a uniform illegal marketing campaign, common issues of fact and law not only predominate but overwhelm any individual issues before the Court. These questions include, but are not limited to, whether buying a pizza is sufficient to establish consent; whether OnTime4U used an automatic telephone dialing system ("ATDS") under the TCPA; whether a text message is considered a "telephone call"; whether Papa John's

PLAINTIFF'S MOTION TO CERTIFY
(Case No. 2:10-cv-01139-JCC)

1

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

corporate entities are liable for the transmissions made by OnTime4U; and whether the illegal transmissions were knowing or willful violations of the TCPA.

The answer to each of these questions for the class representative, Ms. Agne, shall be determinative for the entire class.  Forcing each consumer to litigate identical questions in many thousands of separate actions would lead to inconsistent results, create a tremendous and unnecessary cost upon the court system, and undercut Congressional intent in passing the current version of Rule 23.  It is hard to imagine a better case suited for certification.  Therefore, Plaintiff respectfully requests that a class action be certified with respect to all consumers who were sent unsolicited text messages by Papa John's vendor, OnTime4U.

## II. RELIEF REQUESTED

Pursuant to Fed. R. Civ. P. 23, Plaintiffs respectfully request this Court to certify the following two classes (or subclasses):  (1) a nationwide class (hereinafter "Class Members" or specifically "National Class") of persons entitled to remedies under federal law including

> all persons in the United States of America who were sent, to their cellular telephone numbers, at least one unsolicited text message that marketed a Papa John's branded product, good, or service through OnTime4U.[1]

and (2) a class limited to Washington residents ("Washington subclass") who are entitled to remedies under Washington State law including

> all persons in Washington State who were sent, to their cellular telephone numbers, at least one unsolicited text message that marketed a Papa John's branded product, good, or service through OnTime4U.

Both classes are identical other than the claims being brought.  Plaintiff seeks certification pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3) in order for class members to pursue their claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227.  Further, the Washington subclass seeks to bring claims under Washington Consumer Protection Act, RCW 19.86.10, *et seq* for violations of Washington State statutory law, specifically RCW 19.190.060.

---

[1] Defendants have yet to produce all information regarding Papa John's text message marketing campaigns from 2006 to present. Plaintiff reserves the right to broaden her class definition if discovery shows that other vendors used by Defendants were engaged in similar conduct.

PLAINTIFF'S MOTION TO CERTIFY
 (Case No. 2:10-cv-01139-JCC)

## III. STATEMENT OF FACTS

### A. Through Its Vendor OnTime4U, Papa John's Sent Ms. Agne and Class Members Unsolicited Text Messages Without Prior Express Consent

In late 2009, OnTime4U began an illegal multi-state marketing campaign by sending hundreds of thousands of unsolicited text messages to consumers' cellular telephones across the country on behalf of—*and at the sole request of*—Papa John's and its franchises. *See e.g., Fry Decl.* ¶¶ 11, 17,  Oct. 19, 2011, ECF No. 152.  By April 2010, Ms. Agne was a victim of the campaign, receiving multiple unsolicited text messages on her cellular telephone. *Declaration of Maria Agne* ("*Agne Decl.*"), ¶ 5.  The text messages represented that they were sent by Papa John's and solicited class members to purchase a Papa John's pizza. *Id.* at ¶ 6.  Each message provided the customer with a telephone number to call and a promotional code so that Papa John's could apply applicable discounts.  *Fry Decl.* ¶ 18.

OnTime4U was a text message marketing entity based out of Oregon that offered to boost Papa John's profits by soliciting en masse to its customers through a barrage of text messages. The Papa John's stores would provide to OnTime4U telephone numbers from their point-of-sale system for customers who had purchased pizza.  *Id.* at ¶ 9., *see e.g. Initial Disclosures* Ex. 3, Oct. 18, 2010, ECF No. 41 (samples of provided numbers). At no point in time did customers give their express consent to receive text messages from Papa John's.  *Agne Decl.* ¶¶ 7, 10.

> There was no opt-in procedure where any of the recipients could give their prior consent to us sending them text message advertisements on behalf of our users.  To my knowledge, none of the recipients of the text messages we sent on behalf of our users gave their consent to receiving our users' text message advertisements prior to our [automatic telephone dialing system] sending them the message.

*Fry Decl.* ¶ 12, ECF No. 152. This was confirmed by Defendant Sonneborn, the owner of Defendant Rain City Pizza, Rose City Pizza and Seattle PJ Pizza who testified that, apart from the act of customers' giving their phone number when buying a pizza, consent was never provided to turn the customer's information over to OnTime4U or market to their cellular phones. *See* Deposition of Kevin Sonneborn ("*Sonneborn Dep.*") 94:14-22, 95:2-6, 100:15-23, attached as Exhibit 1 to Declaration of Donald W. Heyrich ("*Heyrich Decl.*").

PLAINTIFF'S MOTION TO CERTIFY
 (Case No. 2:10-cv-01139-JCC)

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

The marketing campaign spread like a virus and was advanced, directed, and encouraged by Papa John's to its franchises and corporate stores.  By December 21, 2009, Defendant Papa John's Franchise Business Director, Kevin Stepusin, sent a message on behalf of Papa John's to his "Team" where he directs them to OnTime4U which "uses your customers' cell phone numbers (from your profit system) to send a picture text via your customer cell phone." *See Kirby Decl.* ¶ 3, Ex. 2, Oct. 19, 2011, ECF No.153.  Mr. Stepusin's communication came just a month after the OnTime4U Defendants met with the CEO and Chairman of Papa John's, Mr. Schnatter, as well as Vice-President of Digital Marketing, Jim Ensign, at Papa John's annual franchise meeting in Las Vegas, Nevada.  *See Fry Decl.* ¶ 20, ECF No. 152; *Kirby Decl.* ¶ 22, Ex. 24, ECF No. 153.  Defendant Sonneborn testified unequivocally that he considered this email from Kevin Stepusin as approval by Papa John's corporate to conduct—and continue to conduct—the text message campaign. *Sonneborn Dep.* 98:14-24.  In fact, even after receiving customer complaints, and insufficient revenue, Papa John's corporate agent told Mr. Sonneborn to continue the campaign into 2010.  *Id.* at 99:5-25.

Ultimately, the illegal marketing had become so widespread that Papa John's reversed course, and on April 27, 2010 sent the following memorandum to all of its corporate stores and franchises:

> In recent months our Customer Support and Digital Marketing teams have received complaints about unsolicited SMS and MMS messages being sent to mobile phones. Investigation of these messages lead to a company called OnTime4U, which has been contracting with Papa John's franchisees and corporate operators to send such messages to customers by exporting customer telephone numbers from our PROFIT point of sale system.
>
> Papa John's Legal and Digital Marketing department do not believe that the transactional business exception applies in this context and have concluded that **the practice and process** of sending UNSOLICITED to mobile devices is most likely ILLEGAL.

*Kirby Decl.* Ex.13, ECF No. 153 (emphasis added).  In other words, the very marketing Papa John's authorized and encouraged its corporate stores and franchises to use in 2009 and early 2010 was violating the TCPA because the "practice and process" of the entire campaign (i.e., spamming their customers with text messages from phone numbers taken from anyone who may have ordered a pizza) was "ILLEGAL."  It is this "practice and process" advanced by Papa

HEYRICH KALISH McGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

John's through OnTime4U and franchises that Plaintiffs seek to challenge as a common class.

**B.   Papa John's and OnTime4U's Self-Described ILLEGAL Practice and Process Impacted Tens to Hundreds of Thousands of its Customers**

Defendants' illegal marketing has impacted numerous customers nationwide.  In opposition to Ms. Agne's motion to remand, City Pizza Defendants conceded the following, "[I]n 2010 [we] provided 'call lists,' comprised of individuals who had previously ordered pizza from our Washington stores to a third party marketing company to use.  The call lists contained approximately _53,870 telephone numbers_." *Defs. Resp. Mot. Remand* Ex. 1, Aug. 23, 2010, ECF No. 13.  Yet, this was just the tip of the illegal iceberg.  Former partner of OnTime4U, Jennifer Fry, confirmed that OnTime4U in late 2009 had reached an agreement to send 30,000 text messages on behalf of City Pizza Defendants who were doing business as Great Western Dining.[2] *Fry Decl.* ¶ 17.  Recently produced discovery responses uncovered an additional 15,000 telephone numbers. *Heyrich Decl.* ¶ 10.  Combined with the total number of telephone numbers identified when Defendants removed this action from state court, the City Pizza Defendants alone have produced over 68,000 telephone numbers provided to OnTime4U for the purpose of sending unsolicited text messages. *Id.*

Put succinctly by Jim Fry of Defendant JTF Enterprises, "[OnTime4U] have increased their volume by ***tens of thousands if not hundreds of thousands of texts per week*** which may explain the complaint increase?" *Kirby Decl*. Ex.12 at 3, ECF No. 153.  (emphasis added).  Jennifer Fry estimates that even by November 2009 the Papa John's campaign was already receiving 200-500 complaints.  *Fry Decl.* ¶ 22.[3]  Moreover, beyond Washington, preliminary discovery already confirms that the illegal marketing practice reached stores across California, Oregon, Arkansas, Mississippi, Wyoming, Montana, Idaho, and South Dakota. *See, e.g., Heyrich Decl.* ¶ 12.[4]

---

[2] Great Western Dining appears to be a d/b/a of the City Pizza Defendants and was never incorporated.

[3] Jennifer Fry estimates that the complaint rate was near 1% which would then equate to 20,000-50,000 messages sent just in November 2009 alone (the very start of the campaign).  *Fry Decl.*¶ 22.

[4] Without Defendants' required discovery—which is not due until after the filing deadline of this motion—the store location was determined by Plaintiff from taking the store number where referenced in complaints and using Papa John's online store locator at http://order.papajohns.com/storelocator/page.html.  *Heyrich Decl.* ¶ 12.

PLAINTIFF'S MOTION TO CERTIFY
 (Case No. 2:10-cv-01139-JCC)

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

Consequently, it is undisputed that Defendants' self-described illegal practice and process of sending unsolicited text messages through their vendor, OnTime4U, affected tens to hundreds of thousands of class members across the country.  Although Papa John's continues to aggressively resist full discovery regarding the scope of this illegal marketing, the voices of the consumers Ms. Agne has discovered thus far give context to this "ILLEGAL" "practice":

- <u>I just received a total of 44 text messages from papajohns3498@gmail.com</u> --on my cellphone. I'm assuming they counted as more than one because of all the pictures. <u>Text Messages cost me money!!!!</u> I am extremely mad. I don't mind e-mails, I don't mind flyers, but sending me unsolicited text messages on my phone is annoying, rude and an unnecessary expense in this economy.  Because of you I had to go into my account and block all text messages! …On my plan I pay 10 cents per message even if I don't read them. **Shame on you!**

*Consumer from Woodinville, Washington.  Kirby Decl*. Ex. 9, ECF No. 153. (emphasis added).

- I just received two photo/text messages on my mobile phone from your company. I do not want to EVER receive any solicitations from your company on my mobile phone, including phone calls, text messages or photo messages. In addition, I do not wish for you to share or sell my contact information to anyone.

*Consumer from Portland, Oregon.  Kirby Decl*. Ex. 9, ECF No. 153.

- I have NEVER requested texts be sent to me from Papa Johns or any business. You are requesting my cell phone number, but I do not trust you or your company. Under no circumstances are you allowed to share my personal information without my consent.

  Mr. McDonnell [Papa John's marketing manager], I continue to receive their unwarranted texts on a weekly basis.

*Consumer from Pasadena, California.  Kirby Decl*. Ex. 5, ECF No. 153.

- Over the past few months I have receive 4 unsolicited text messages to my phone. These texts were never requested, are costing me money, and arriving late at night. <u>Please note that my number is on the national do not call list, and remove me from any marketing databases you may have.</u>

*Consumer from Mountlake Terrace, Washington. Kirby Decl*. Ex. 9, ECF No. 153. (emphasis added).

Or most passionately—if not artful—from a consumer in Bellevue, Washington:

    I KEEP GETTING UNSOLICITED TEXT MESSAGES FROM PAPA JOHNS TRYING TO SELL ME PIZZAS. WHEN I ORDERED ONLINE ONE TIME I NEVER

PLAINTIFF'S MOTION TO CERTIFY
 (Case No. 2:10-cv-01139-JCC)

**HEYRICH KALISH MCGUIGAN PLLC**
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

6

WANTED TO RECEIVE SUCH NOTIFICATIONS. I CANT TURN THEM OFF IN MY PREFERENCES BECAUSE IT SHOWS THAT I AM ALREADY *NOT* CURRENTLY SUBSCRIBED TO RECEIVE TEXT MESSAGES! SO...THEREFORE I WILL DO ALL I CAN DO TO REMOVE MY ACCOUNT OR FALSIFY MY PHONE NUMBER SO THAT I CAN STOP THIS FROM HAPPENING *AND* I WILL NEVER EVER [expletive omitted] ORDER FROM YOU [expletive omitted] EVER AGAIN!

OH YEAH AND I LEFT THE CAPS LOCK ON ON PURPOSE! I REALLY *AM* SHOUTING AT YOU.

*Id.* (emphasis in original).  OnTime4U, Papa John's, and Papa John's franchises and corporate operators engaged in an illegal marketing campaign that impacted consumers from Columbus, Mississippi to Pasadena, California.  Without permission, consent, or care for the impact, franchises in Washington alone turned over tens of thousands of its customers' phone numbers to be spammed by OnTime4U.  Clearly, the marketing campaign was insidious and widespread.

## C.  OnTime4U Used an Automated Dialing System to Spam its Customers

Defendant OnTime4U's illegal marketing campaign was simple.  OnTime4U would receive from Papa John's a list of customers in an Excel-compatible spreadsheet.  That spreadsheet was loaded into an automatic telephone dialing system ("ATDS").  *Fry Decl.* ¶¶ 8-10, ECF No. 152.  The City Pizza Defendants have already filed with the Court several examples of such spreadsheets. *See Initial Disclosures* Ex. 3, Oct. 18, 2010, ECF No. 41. Each spreadsheet "would be uploaded to the ATDS together with the text of the advertisement and any images to accompany the text." *Fry Decl.* ¶¶ 8-10, ECF No. 152.  The ATDS would then connect with a third-party system to identify and remove any "landline" telephone numbers, identify the cell phone carrier each number was associated with, and then convert the cellular telephone numbers into a form that would be processed by each carrier and sent to an individual's cellular device as a text message.  *Id.*  The system automatically converted a consumer's telephone number into an email address, and then send text messages from the list of telephone numbers.  *Id.*[5]  The process

---

[5] Defendants, and Jennifer Fry, contend that they did not use an ATDS when they spammed cellular telephones by sending emails to telephone carriers, knowing that the messages would be automatically converted to text messages. This argument has already been squarely rejected by the courts. *See, e.g., Joffe v. Acacia Mortg. Corp., 211 Ariz.* 325, 335, 121 P.3d 831, 841 (Ct. App. 2005).  In any event, this issue is common to the entire putative class and its resolution applies equally to Ms. Agne as it does the class.

was far from flawless.  At times, messages were delayed and sent in the middle of the night due to the high volume being sent by the automatic computer system and failures by what Ms. Fry described as the "load balancer" across the "one or two routers." *Id.*  Numerous consumers received calls well after midnight. *Sonneborn Dep.* 137:11-138:5 (describing how Defendant Sonneborn himself received a message at 3:00 a.m., and he remembers a nurse being woken in the middle of the night by a text message).

Ultimately, consumers were forced to opt-out of receiving these messages, as neither OnTime4U, nor Papa John's, ever obtained consent prior to sending messages.  *Fry Decl.*  ¶ 12. ECF No. 152. The entire practice and process was based on the belief that, as long as the numbers belonged to those who had purchased pizza within the last year, the marketing campaign was legal. *Sonneborn Dep.* 95: 2-6. It is this practice that Plaintiffs now challenge.

## IV. STATEMENT OF ISSUES

Whether this action shall be certified as a class action suit pursuant to Fed. R. Civ. P. 23(b)(3) or alternatively (b)(2)?

## V. EVIDENCE RELIED UPON

Plaintiff relies on the Declarations of Maria Agne, Donald W.  Heyrich, Jennifer Fry, as well as the previously filed documents and pleadings in this case.

## VI.    ARGUMENT

### A. The Policy Behind Rule 23 Requires Certification in This Case to Protect the Interest of Justice and the Rights of the Class

Over thirty years ago, the United States Supreme Court confirmed that "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Barnard*, *452* U.S. 89, 99 (1981). This is particularly true in consumer protection claims where a Defendant may have committed a multitude of small violations across a large group of consumers.  As the entire panel of the Washington State Supreme Court recently stated, "the interests of justice require that in a doubtful case ... <u>any error, if there is to be one, should be committed in favor of allowing the class action</u>." *Scott v. Cingular Wireless*, 160 Wn.2d 843, 857, 161 P.3d 1000, 1007 (2007)

PLAINTIFF'S MOTION TO CERTIFY
 (Case No. 2:10-cv-01139-JCC)

*(emphasis added)*. This Court affirmed the same principle in *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D. Wash. 2007), when it held that, under the TCPA, the lack of shifting attorney fees and the small amount in controversy would often create a bar from Plaintiffs seeking relief, undercutting a core purpose of Rule 23:

> If the claims were adjudicated individually, defendant would owe the same amount of damages. Rather, it is hoping that if no class is certified, it will avoid damages for the vast majority of its violations. The Court will not decline to certify a class on that basis. Furthermore, the class size is a direct result of defendant's large number of violations, for which it should not be rewarded.

*Id.* at 650. Washington is not alone in upholding these core policy considerations in the context of TCPA litigation.   The Kansas Supreme Court looking at the policy behind Rule 23 reached the identical conclusion:

> We do not agree with the defendant's contention that over 100,000 individual small claims actions would be superior to a single class action. While the defendant in such an action might benefit if only a small number of plaintiffs found it worth their while to bring suit or were aware of their rights under the TCPA, <u>this small turnout would serve only to frustrate the intent of the TCPA and to protect junk fax advertisers from liability. It would, accordingly, not provide a "superior" method for individual plaintiffs.</u>

*Critchfield Physical Therapy v. Taranto Group, Inc.,* 263 P.3d 767, 780 (Kan. 2011) (certifying a TCPA illegal marketing class Kansas's equivalent of Rule 23(b)(3)). Thus, although the trial court is afforded great discretion under Rule 23, close cases should be decided in favor of certification, "for it is always subject to modification should later developments during the course of trial so require."  *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968); see also *Sax v. World Wide Press, Inc*., 809 F.2d 610, 615 (9th Cir. 1987) (noting the strong public policy in pursuing claims collectively versus the judicial burden created by an overwhelming sea of individual claims).  It is in this context that the Court should start with the fundamental "policy of class litigation, which favors filing a single lawsuit rather than many." *Catholic Soc. Services, Inc. v. I.N.S*., 232 F.3d 1139, 1153 (9th Cir. 2000).

PLAINTIFF'S MOTION TO CERTIFY
 (Case No. 2:10-cv-01139-JCC)

**HEYRICH KALISH MCGUIGAN PLLC**
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

**B.  Under Rule 23, Certification is Based on the Facts and Legal Theory as Pled Without Consideration of the Merits**

Although the merits of this case are compelling, the Court should not consider them while deciding this motion for class certification.  "[O]n a motion for class certification, a court may not decide the merits of the case, but must accept the substantive allegations contained in the complaint as true."  5 Moore's Federal Practice & Procedure § 23.46[4] (3d ed.); *see also Freedman v. Louisiana Pacific Corp.*, 922 F. Supp. 377, 398 (D. Or. 1996) (in ruling on motion to certify the court does not consider the merits).  Thus, a district court in considering a motion for certification is "bound to take the substantive allegations of the complaint as true."  *Blackie v. Barrack,* 524 F.2d 891, 901 n.17 (9th Cir. 1975), *cert. denied,* 429 U.S. 816 (1976). The factual allegations and legal theories are presumed to be true.

The Ninth Circuit's 2010 decision in *United Steel* is highly instructive regarding the proper analysis on whether to certify under Rule 23. *See United Steel v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010).  In *United Steel,* although the district court found that all four provisions of Rule 23(a) had been met, it denied plaintiff's certification motion under Rule 23(b)(3)'s "so-called predominance requirement [because] if Plaintiffs' [liability theory] is rejected…The Court will be faced with a case…requiring individualized trials on each class member's meal period claims…and a class would not be superior method of resolving this suit." *Id.* at 805.  In other words, the district court based its decision to deny certification on defendant's argument that, *if* plaintiff was incorrect about its overarching legal theory, *then* liability could only be established by applying an unmanageable individualized inquiry.  *Id.*  The Ninth Circuit reversed the decision finding the district court improperly applied the standard for review of a certification motion and in doing so abused its discretion.  The Ninth Circuit held that

> a court can never be *assured* that a plaintiff will prevail on a given legal theory prior to a dispositive ruling on the merits, and a full inquiry into the merits of a putative class's legal claims is precisely what both the Supreme Court and we have cautioned is not appropriate for a Rule 23 certification inquiry. *See Eisen,* 417 U.S. at 177–78, 94 S.Ct. 2140; *Cummings v. Connell,* 316 F.3d 886, 896 (9th Cir.2003) (noting that "this circuit does not favor denial of class certification on the basis of speculative conflicts"); *Staton,*

PLAINTIFF'S MOTION TO CERTIFY
 (Case No. 2:10-cv-01139-JCC)

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

10

327 F.3d at 954; *Moore v. Hughes Helicopters, Inc.,* 708 F.2d 475, 480 (9th Cir.1983) (holding that "it is improper to advance a decision on the merits to the class certification stage").

*Id.* at 809. Therefore, when determining whether a case should be certified, the court must accept as true not only the factual allegations as pled in the complaint, but review the requirements of Rule 23 based on "plaintiffs' *actual* legal theory." *Id.* at 808. (emphasis in original); S*ee also S. Ferry LP No. 2 v. Killinger,* 271 F.R.D. 653, 657 (W.D. Wash. 2011) (confirming that a district court must not decide the merits of a factual or legal dispute before it grants class certification).

To be sure, some consideration of the factual predicates of Rule 23 itself is necessary but for the policy reasons stated above, **"**[p]ursuant to Fed.R.Civ.Proc., Rule 23, plaintiff's burden of establishing a factual basis for class certification is not a heavy one*." Irwin v. Mascott*, 96 F. Supp. 2d 968, 971-72 (N.D. Cal. 1999).  Moreover, "it is generally accepted that Rule 23 should be liberally construed."  Newberg & Conte, *Newberg on Class Action* § 7.20 (4th ed. 2002). Thus, even though the Court must carefully consider each prong of Rule 23, plaintiffs are entitled to the benefit of common sense assumptions regarding these facts. *Id*. at § 7.19-20.

These standards and policy considerations are heightened when the case involves small amounts of individualized damages in a consumer protection action.  Thus, "except where underlying class facts and circumstances are sheer speculation, the initial burden on the party invoking the class action to show class facts is light. A well-pleaded complaint usually constitutes a prima facie showing of these facts sufficient to shift immediately the burden of disproving them to the party opposing the class." *Id.*  This standard is necessary where discovery has yet to be fully developed and in jurisdictions, such as ours, where local rules mandate early certification decisions often well before a full record on discovery can be developed.  *Id.*

## C.  Plaintiffs Meet Each of Four Requirements of Rule 23(a)

To be certified as a class, the proposed class must meet all four elements of Fed. R. Civ. P. 23(a), i.e, numerosity, commonality, typicality, and adequacy of representation.  The class must also meet the requirements of any one of the subdivisions of Rule 23(b).  Plaintiffs meet the

PLAINTIFF'S MOTION TO CERTIFY
 (Case No. 2:10-cv-01139-JCC)

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

11

1    four requirements of Rule 23(a).  Plaintiffs also have sufficiently met the criteria of Rule

2    23(b)(3), and alternatively (b)(2) fully discussed *infra*.

3              1.    <u>Defendants' widespread illegal marketing campaign satisfies numerosity.</u>

4              The first requirement under Fed. R. Civ. P. 23 is that the proposed class be so numerous

5    that joinder of all class members in the action is impracticable.  Fed. R. Civ. P. 23 (a)(1). While

6    there is no magic number under federal law which automatically renders joinder impracticable,

7    impracticability of joinder is self-evident in this case.  The proposed class consists of many

8    thousands of customers of Papa John's and thus clearly meets the numerosity requirement.   See

9    *Slaven v. BP America, Inc.,* 190 F.R.D. 649 (C.D. Ca. 2000) (analyzing Ninth Circuit and treatise

10   authority to conclude that the numerosity requirement is met when the class <u>exceeds 40</u>

11   <u>members</u>) ; *see also Newberg* § 3:05 at 3-25 ("In light of prevailing precedent, the difficulty

12   inherent in joining as few as [forty] class members should raise a presumption that joinder is

13   impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule

14   23(a)(1) on that fact alone."); see also  *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1320

15   (9th Cir. 1982) (provided an extensive survey of class certification across the Circuits regarding

16   numerosity—citing cases where the class was composed of as little as seven members).

17            Although full discovery still has not been produced on this issue, preliminary evidence

18   already establishes that at least 68,000 phone numbers were sent to OnTime4U in Washington

19   alone, which have been identified and are in the record.  Over 200-500 complaints had been

20   generated by November 2009.  Moreover, beyond Washington, discovery confirms that the

21   illegal marketing practice reached stores across California, Oregon, Arkansas, Mississippi,

22   Wyoming, Idaho, and South Dakota.  Numerosity has been well pled and established.[6]

---

[6] "In cases where class numerosity is not precisely known, general knowledge or common sense will often support judicial notice or an assumption that there is sufficient numerosity to make joinder impracticable.  Similarly, where class numerosity information is in the possession of the party opposing the class…the courts will generally not determine the issue adverse at an early stage. " *Newberg* § 7:20 (4th ed. 2002).

PLAINTIFF'S MOTION TO CERTIFY
 (Case No. 2:10-cv-01139-JCC)

12

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

2.    <u>Common questions of fact and law dominate Plaintiff's class claims due to Papa John's uniform illegal marketing campaign.</u>

The second requirement under Fed. R. Civ. P. 23(a) is that there are questions of law or fact common to the class. The Ninth Circuit has instructed that *either* a common issue of law <u>or</u> a common issue of fact is sufficient to meet the requirement.

> All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019-20 (9th Cir. 1998).  The requirement is met by a "minimal" showing and is "not high."  *Id.*  As long as "the class members have suffered the same injury" commonality will be established. *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).   "An alleged common course of conduct is sufficient to satisfy the common question requirement of Fed.R.Civ.P. 23(a)(2)." *Scott v. Aetna Servs.,* 210 F.R.D. 261, 267 (D. Conn. 2002).

In examining certification under the TCPA for unsolicited text messages, the Southern District of California, on December 15, 2011, found that in such a text messaging marketing case, *both* common issues of facts as well as common issues of law exist under Rule 23(a)(2).

> Here, the members of the proposed class allegedly each received two text messages: one initial text message that advertised Defendant's products or services, and a second confirmatory text message following the class member's opt-out text message. Thus, in addition to sharing "a common core of salient facts," the class members share one common legal issue: whether the confirmatory text messages sent by Defendant to the class members violated the TCPA. Rule 23(a)(2) is therefore satisfied.

*Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS MDD, 2011 WL 6300050, at *2 (S.D. Cal. Dec. 15, 2011).  On similar grounds, this Court certified a junk fax case finding commonality where plaintiff sufficiently pled that defendants sent unsolicited facsimiles to a class of over 3,000 persons.

> The TCPA will apply to all class members, and Washington law will apply to all members of the Washington subclass. Furthermore, it is undisputed that [defendants] engaged in a common course of conduct by obtaining the facsimile numbers in the same way and sending the same broadcast facsimile[4] to all recipients within a short period of time as part of the same effort to generate new business….accordingly, the commonality requirement is met.

PLAINTIFF'S MOTION TO CERTIFY
  (Case No. 2:10-cv-01139-JCC)

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

*Kavu,* 246 F.R.D. at 647.  Moreover, in January of this year, the Western District has twice found commonality under a nearly identical TCPA claim where plaintiffs alleged that defendants had autodialed consumers' cellular telephones without their express consent.  *See Arthur v. Sallie Mae, Inc.*, No. C10-0198JLR, 2012 WL 90101, at *6-7 (W.D. Wash. Jan. 10, 2012) (holding that "because commonality requires only a single common question" Rule 23(a)(2) has been established); *see also McClintic v. Lithia Motors, Inc.,* No. C11-859RAJ, 2012 WL 112211, at **3-4 (W.D. Wash. Jan. 12, 2012) (finding certification appropriate under Rule 23(a) and Rule 23(b)(3) when defendants spammed over 58,000 consumers with text messages to solicit their product.[7]  The court held in such TCPA and WCPA illegal text message marketing cases "common questions arising from [defendant's] marketing campaign predominate," and therefore, certification is appropriate on those grounds).

Similarly, both questions of law <u>and</u> questions of fact common to the class members are present and properly pled by Plaintiff Maria Agne.  As demonstrated in Papa John's April 27, 2010 memorandum—as well as pled in Plaintiff's complaint—OnTime4U had a "<u>practice and process of sending UNSOLICITED [text messages] to mobile devices.</u>"  *Kirby Decl.* Ex. 13, ECF No. 153. From this "practice and process," common facts predominate such as (1) OnTime4U marketed solely by sending text messages to mobile devices; (2) OnTime4U was provided these telephone numbers gathered from Papa John's point of sales system; (3) neither Papa John's nor OnTime4U conducted this marketing with the prior express consent of customers; and (4) the marketing was done with an automated system.   As the complaints of consumers gathered thus far amply demonstrate, the impact of the common marketing campaign reached consumers across the country.

---

[7]It should be that noted in *Arthur,* because the court was considering certification in the context of a settlement, the court found the standard was heightened from a contested matter; "[t]he court must pay undiluted, <u>even heightened</u>, attention to class certification requirements' because, unlike in a fully litigated class action suit, the court will not have future opportunities 'to adjust the class, informed by the proceedings as they unfold." *Arthur*, 2012 WL 90101, at *6 (emphasis added).

PLAINTIFF'S MOTION TO CERTIFY
 (Case No. 2:10-cv-01139-JCC)

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

14

Moreover, all liability issues are common to the class. Common issues of liability are predominant because the conduct itself—and therefore any legal defenses to it—apply with equal force to Ms. Agne as they would to any other putative class member.  *See Durrett v. John Deere Co.*, 150 F.R.D. 555, 558 (N.D. Tex. 1993) ("Because this action arises out of a single type of contract that is virtually, if not completely, identical in each transaction with [the company], common questions of law and fact abound").  Common questions of law in the instant case include but are not limited to (1) whether Defendants' contention that buying a pizza is sufficient to establish a business relationship is valid as a matter of law; (2) whether an established business relationship is a defense to sending text messages to a cellular phone without express consent under the TCPA and/or WCPA; (3) whether a text message is a phone call within the meaning of the TCPA; (4) whether Papa John's is liable directly or through the acts of its franchises, vendors, or other agents; (5) whether the system used by OnTime4U qualify as an "auto-dialer" under the TCPA; (6) whether the text message is considered a "commercial electronic text message" under RCW 19.190.060; and (7) whether the violation of the TCPA was "knowing" or "willful."  Each of these overarching legal issues is raised by the common pleading in Ms. Agne's complaint.   Consequently, the presence of these common issues of both fact and law each separately satisfy the minimal pleading prerequisite of commonality.  Finally, because these questions are common to the entire class and predominate all individual issues, certification of the class will provide the superior method for ensuring fair and efficient adjudication, meeting the necessary 23(b) findings as well.  *See infra.*

3.    Ms. Agne's claims are typical of the class and no conflict exists.

The third prerequisite for a class certification under Fed. R. Civ. P. 23(a)(3) is that the claims or defenses of the class representatives be typical of those of the class members.  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented the typicality requirement is usually satisfied, irrespective of varying fact patterns which underlie individual claims." *Kavu,* 246 F.R.D. at 648 (finding typicality under the TCPA where plaintiff alleged it received the same improper facsimile from

PLAINTIFF'S MOTION TO CERTIFY
 (Case No. 2:10-cv-01139-JCC)

**HEYRICH KALISH MCGUIGAN PLLC**
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

15

the named defendant); *see also Lo*, 2011 WL 6300050, at *3 (holding that because "plaintiff and the class members assert the same violation of the TCPA arising from the confirmatory text messages sent by Defendant, Plaintiff's claims are typical of the claims of the class members").

Typicality exists if the claims of the class representative and the members of the class "stem from a single event or are based on the same legal or remedial theory." 7A Wright & Miller, Federal Practice and Procedure § 1764. The Ninth Circuit has held that where the challenged conduct is out of a common practice imposed against all class members

> the typicality inquiry involves comparing the injury asserted in the claims raised by the named plaintiffs with those of the rest of the class. We do not insist that the named plaintiffs' injuries are identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct.

*Armstrong v. Davis,* 275 F.3d 849, 868-69 (9th Cir. 2001). Here, Ms. Agne was subjected to the same illegal marketing campaign, by the same marketing vendor, soliciting her to respond to the text and purchase a Papa John's pizza. Her claim is not only typical but it is identical to the common claims of the class, i.e. a violation of the TCPA and WCPA based on this specific marketing campaign.

        4.     <u>The class is adequately represented by both Ms. Agne and class counsel.</u>

The fourth prerequisite, adequate representation, is meant to ensure that the absent class members are properly represented by both the named class representatives and their attorneys. "Rule 23(a)(4) permits the certification of a class action only if the representative parties will fairly and adequately protect the interests of the class." *Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003). In *Staton,* the Ninth Circuit established the test for adequacy as follows: "To determine whether the representation meets this standard, we ask two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

Ms. Agne is capable of "fairly and adequately protect[ing] the interests of the class." Fed. R. Civ. P. 23 (a)(4); *Agne Decl.* ¶¶ 11-12. Her common interests with the class are addressed above. There are no conflicts of interest between Ms. Agne and the class members. *Id.* The class and Ms.

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

Agne were subjected to the same illegal marketing practices of Defendants.  Ms. Agne takes her role as class representative seriously and is committed to and protecting the interests of the class. *Id.*

Finally, counsel for the class has extensive experience in class action lawsuits, and are adequate counsel for the class.  For example, Ms. Agne is represented by class counsel Donald W. Heyrich, managing partner of Heyrich Kalish McGuigan, PLLC, and several other attorneys, including  co-class counsel Albert H. Kirby of the Kirby Law Group. *Heyrich  Decl. ¶¶ 2-9.*  The experience of Mr. Heyrich as well as the other attorneys representing Ms. Agne  in this matter is further outlined in Mr. Heyrich's declaration.  *Id.*  Combined, Ms. Ange's counsel, and associated firms, have substantial practice in class, collective and representative actions and are amply qualified to handle the claims in this lawsuit.  *Id.*  Counsel takes their responsibility seriously and is committed to the resources and advocacy necessary to see this case brought to resolution.  *Id.*

**D.  A Class Action is Maintainable Under Both Rule 23(b)(3) and, Alternatively, Under Rule 23(b)(2)**

Once Plaintiff has met the pleading threshold of Rule 23(a), she must also demonstrate that the case is maintainable as a class action under Rule 23(b).  The test asks whether, taking the facts and legal theory as pled by the Plaintiff—as well as a common sense review of the evidence developed thus far, the case presents a manageable class action.  *See United Steel*, 593 F.3d at 809; *see also Dukes v. Wal-Mart Stores, Inc.,* 603 F.3d 571, 582 (9th Cir. 2010) *rev'd on other grounds,* 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011).  Again, "[t]he benefit of any doubts as to manageability should be resolved in upholding the class, subject to later possible reconsideration."  *Newberg* § 7:26.  Here, Plaintiffs seek certification per Rule 23(b)(3) and alternatively under Rule 23(b)(2).  Each test is considered below.

1. <u>Class certification is maintainable under Rule 23(b)(3) because common questions predominate over individual inquiries and the class mechanism is superior to thousands of individual cases.</u>

As a consequence of Defendants' broad and uniform illegal marketing practice, the class is maintainable under Rule 23(b)(3).  Plaintiff easily vaults the various Rule 23(a) criteria, and this is perhaps the best indicator that Rule 23(b) (3) is satisfied.  *See Rossini v. Ogilvy & Mather, Inc.,* 798

PLAINTIFF'S MOTION TO CERTIFY
 (Case No. 2:10-cv-01139-JCC)

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").  When seeking "opt-out" class certification, the plaintiff must fulfill the additional requirements set forth in Rule 23(b)(3): (1) common questions must predominate over any questions affecting only individual members; and (2) class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3); *see, e.g., Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997).  Although often predominance (i.e. uniformity of claims and defenses) will strongly establish superiority; how the class is the most efficient mechanism for resolution is explained separately below.

**Predominance.** This Court has long recognized "that the predominance of common issues requirement under Rule 23(b)(3) is a test readily met in certain cases alleging consumer … fraud." *Mortimore v. F.D.I.C.*, 197 F.R.D. 432, 438 (W.D. Wash. 2000) *citing Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997).  The reason is simple: when a defendant takes a common action (here, text marketing) and applies it to a mass group of consumers, the defenses and necessary proof overwhelmingly applies to the class as opposed to any individual.  *See generally, Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1174 (9th Cir. 2010) (reversing the district court's denial of certification and holding that in a consumer protection class action common issues predominate in spite of defendants individualized causation theories). *See also Kelley v. Microsoft Corp.,* 395 F. App'x 431, 432 (9th Cir. 2010) (reversing the district court's denial of certification in an alleged illegal marketing practice to consumers by Microsoft holding that the Court improperly failed to balance the common issues of law and fact established in its commonality findings under Rule 23(a)(3), as well as the inherent commonality in a CPA claim).

Here, it is evident that Defendants self-described "practice and process of sending UNSOLICITED [text messages] to mobile devices" is the predominant and overarching issue being litigated before this Court. *Kirby Decl*. Ex. 13, ECF No. 153**.**  If the Court finds later on summary adjudication that buying pizza is sufficient for consent, such a decision shall apply to every consumer.  If a jury finds that Papa John's did not participate sufficiently in the marketing campaign to have an agency relationship with OnTime4U, that will apply to every message sent.

PLAINTIFF'S MOTION TO CERTIFY
 (Case No. 2:10-cv-01139-JCC)

18

HEYRICH KALISH McGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

1   If the Court determines that the computer system used is an auto-dialer under the TCPA, that will

2   apply to <u>every</u> class member.   If Defendants argue that because they dialed from a known list

3   there is no violation of the TCPA, this contention applies equally to <u>every</u> transmission.  If under

4   Washington law there is a *per se* violation of the WCPA, then the *per se* statutory $500 recovery

5   applies with equal force to <u>every</u> member of the Washington subclass.

6         Therefore, this case will not simply be determined predominately by class-wide issues

7   of law and fact, but those issues overwhelm all others.  In 2007, this Court certified an almost

8   identically pleaded claim for violations of the TCPA and WCPA due to the transmission of

9   unsolicited facsimiles.  This Court found that the case should be certified under Rule 23(b)(3)

10  because both predominance and superiority had been established. *Kavu,* 246 F.R.D. at 650

11  (holding that violations of the TCPA and WCPA predominate any individualized inquires

12  regarding an illegal fax marketing campaign).  Moreover, this Court again found predominance

13  in a TCPA certification case accepting plaintiff's contention that "common questions present a

14  significant aspect of the case" where defendants had engaged in automatic telephone calls to

15  plaintiffs cellular phones in violation of the act. *Arthur,* 2012 WL 90101, at **8-9. Moreover,

16  two days later the Western District again found Rule 23(b)(3) was established in an illegal text

17  message marketing case under the TCPA and the WCPA finding "the proposed class satisfied the

18  "superiority" requirement of Rule 23(b)(3)" and "common issues of fact and law…predominate in

19  this action" when—like here—plaintiffs challenged defendants conduct of sending over 58,000 text

20  messages to consumers' cellular phones advertising a sale without their consent.  *McClintic,* 2012

21  WL 112211, at *3 ; *see also Grannan v. Alliant Law Group, P.C.,* No. C10-02803 HRL, 2012 WL

22  216522, at * 5 (N.D. Cal. Jan. 24, 2012) (finding predominance and superiority under a Rule

23  23(b)(3) TCPA settlement when defendants autodialed plaintiffs' cellular phones without their

24  express consent).

25        The court in *Lo* similarly found manageability under 23(b)(3) where the focus of the

26  inquiry was on a common alleged violation of the TCPA, "here, a common issue predominates

27  over any individual issue—namely, whether the transmission and content of confirmatory text

PLAINTIFF'S MOTION TO CERTIFY
 (Case No. 2:10-cv-01139-JCC)

19

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

messages allegedly sent by Defendant to all class members violates the TCPA". *Lo,* 2011 WL 6300050, at *2.

A more colorful analysis comes from the Northern District of Illinois certifying a TCPA class action due to unsolicited fax transmissions under Rule 23(b)(3). In rejecting defendants' argument that the case would be plagued with evidence of individual questions of consent (that only the defendant processed and had not produced), the court responded "[Defendants'] contention that questions affecting only individual members would predominate over class issues is no better than pure fiction-and a pretty poor quality of fiction at that." *Id. Targin Sign Sys., Inc. v. Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894, 898-99 (N.D. Ill. 2010).

**Superiority.** The next inquiry is whether the class action mechanism itself is the superior mechanism for resolving this claim. Again, this Court's holding is directly on point finding that superiority is met in a TCPA and WCPA claim based on unsolicited marketing:

> The purpose of this rule is to identify those actions in which certification of a class would achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.
>
> ….
>
> In this case [under the TCPA and WCPA], individual damages are small, and class members would be unlikely to litigate claims on their own. In fact, no other claims have been filed based on [Defendants] broadcast facsimile. Based on the recency of the statute, potential class members may be unaware of their legal rights. Defendant argues that potential class members could sue individually because the CPA provides for recovery of attorney's fees. While attorney's fees are available for Washington plaintiffs, they are not available under the TCPA.
>
> The parties have not identified any difficulties likely to be encountered in the management of this class action. This Court is an appropriate forum for this action because plaintiff seeks to represent

*Kavu,* 246 F.R.D. at 650. *See also, Arthur,* 2012 WL 90101, at **8-9 (finding superiority under a pled TCPA claim, because such claims by their nature have "individual damages [which] are small and class members are unlikely to litigate claims on their own.")

Here, as in *Kavu*, *Arthur,* and *McClintic,* Plaintiff seeks to certify a case under the TCPA with a WCPA subclass. The identical statutory damages are involved ($500 or $1,500 depending

PLAINTIFF'S MOTION TO CERTIFY
 (Case No. 2:10-cv-01139-JCC)

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

20

on whether the jury finds the conduct willful or knowing), and therefore, "individual damages are small, and class members would be unlikely to litigate claims on their own."  Moreover, "no other claims have been filed based on Defendants broadcast [text messages.]."  When considering whether a class action is superior to individual actions, "economy and efficiency are considered the most important elements of the inquiry." *In re Washington Mut. Mortgage-Backed Sec. Litig.,* 276 F.R.D. 658, 668 (W.D. Wash. 2011).  Where the Court is faced with the adjudication of many thousands of claims based on an admitted "practice and procedure" of wide-spread conduct, "[i]t is beyond dispute that having all claims of the class litigated at once will serve judicial economy and efficiency." *Id.*

Finally, "[t]his Court is an appropriate forum for this action because plaintiff seeks to represent a Washington subclass." *Kavu*, 246 F.R.D. at 650.  While this litigation would involve thousands of class members, this class action is readily manageable, particularly when compared to Rule 23 classes in other larger and more complicated cases that have been managed successfully through settlement or trial.  *See Duhaime v. John Hancock Mut. Life Ins. Co*., 177 F.R.D. 54 (D. Mass. 1997) ("class consists of persons or entities who have or had an ownership interest in one or more of approximately 3.8 million [insurance] policies") (nationwide class of approximately three million); *Sollenbarger  v. Mountain States Tel. and Tel. Co*., 121 F.R.D. 417 (D.N.M. 1988) (antitrust class of thousands consisting of all telephone customers in several states approved); *In re Cement and Concrete Antitrust Litig.,* 27 Fed.R. Serv.2d 1334 (D. Ariz. 1979) (antitrust class of approximately 500,000).

There is no doubt that this "Court is well versed in the subject matter of this litigation and is no stranger to handling complex class action litigation."  *In re Washington Mut. Mortgage-Backed Sec. Litig.,* 276 F.R.D. at 668.  Here, the Defendants have already identified (at least partially) the telephone numbers of approximately 68,000 individuals it provided OnTime4U. From this list we can readily identify contact information as demonstrated by Defendant City Pizza's filed initial disclosures, which provided the names, addresses, and contact information of a group of consumers solicited by Defendants. *Defs. Resp. Mot. Remand* Ex. 1, ECF No. 13; *See*

PLAINTIFF'S MOTION TO CERTIFY
 (Case No. 2:10-cv-01139-JCC)

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

21

*also Initial Disclosures* Ex. 3, Oct. 18, 2010, ECF No. 41.  Moreover, as demonstrated by Jennifer Fry's declaration, OnTime4U's system is able to identify which numbers are cellphone numbers, and hence eliminate any landlines that would not be part of the class. *Fry Decl.* ¶ 10, ECF No. 152.  Moreover, to the extent Defendants claim that some stores have destroyed or have not retained the excel spreadsheets they provided OnTime4U, notice can be provided to all consumers who purchased pizza from that store, during that time frame, as identified by Papa John's corporate records.

Defendants' uniform policy and practice of illegal marketing through OnTime4U not only creates legal and factual issues that predominate over the entire class, but constitutes every dispositive issue before the Court.  Requiring Papa John's customers across multiple states to individually litigate their claims is not superior to a single resolution of these issues.  The class is readily available, clearly defined, and identifiable as proven already by Defendants' initial disclosures.  Therefore, as in *Kavu, Arthur, McClintic,* and *Lo,* the Court should grant certification under Rule 23(b)(3).

**E. Class Certification is Alternatively Maintainable Under Rule 23(b)(2) Because Plaintiff Equally Seeks Injunctive Relief to Stop all Future Violations of the Law**

Under Fed. R. Civ. P. 23(b)(2), certification is appropriate when the court finds "[t]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."   *Kavu,* 246 F.R.D. at 649.  Ms. Agne alternatively seeks certification under Rule 23(b)(2), as Ms. Agne's  request for equitably relief  is an equal, if not predominate, motivation for her request of enforcement under the TCPA.   "It is also well settled that a class can be certified under 23(b)(2) even though monetary damages are sought in addition to injunctive relief." *Mortimore v. F.D.I.C.,* 197 F.R.D. 432, 438 (W.D. Wash. 2000). Moreover, the Ninth Circuit has repeatedly affirmed that as long as damages are not the predominate purpose of the litigation, certification under Rule 23(b)(2) is appropriate. *Wang v. Chinese Daily News, Inc.,*

PLAINTIFF'S MOTION TO CERTIFY
 (Case No. 2:10-cv-01139-JCC)

**HEYRICH KALISH MCGUIGAN PLLC**
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

22

623 F.3d 743, 754 (9th Cir. 2010) *cert. granted, judgment vacated*, 132 S. Ct. 74 (2011).  This Court, in analyzing Rule 23(b)(2) in the context of the TCPA, found certification appropriate:

> It is more unlikely that Kavu would undertake this action, particularly as a class representative, for a recovery that is unlikely to exceed $500. Furthermore, Kavu's representative states that Kavu "receives large numbers of unwanted facsimile advertisements every year" and its "primary interest in bringing this action is to stop companies like Defendant from continuing the practice of sending unsolicited facsimile advertisements."

> In addition, the damages sought are incidental to the primary claim for injunctive relief because damages are statutory and a fixed amount. Accordingly, damages may be awarded based on objective standards rather than based on complex, individual determinations. ... In this case, damages will be (1) nothing, if defendant prevails on its argument that its violations were "immaterial," (2) $500 if it does not prevail on that claim, or (3) $1,500 if the Court finds that its conduct was willful. Because defendant engaged in the same conduct regarding all of the class members, the damages issues and calculations will be the same for all.  Moreover, if plaintiff proves its allegations, injunctive relief would benefit all class members.

> For all of these reasons, the Court finds that certification under Rule 23(b)(2) is appropriate because Omnipak has acted on grounds generally applicable to the class, and final injunctive or declaratory relief is appropriate for the class.

*Kavu*, 246 F.R.D. at 649 *(internal citations omitted)*.  As outlined above, Ms. Agne is seeking damages of a fixed amount under the TCPA based on clear allegations and supporting evidence that "[Papa John's] has acted on grounds generally applicable to the class, and final injunctive or declarative relief is appropriate for the class."  Certification under Rule 23(b)(2) is appropriate.

Finally, Plaintiff acknowledges that careful consideration must be given to the recent United States Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2557, 180 L. Ed. 2d 374 (2011). There, the Court concluded that Rule 23(b)(2) certification is inappropriate if damages are individualized to each class member, such as a claim for back pay, different wage loss, or emotional damages.  The Court explained that the nature of individual damages triggers due process considerations which are only addressed by Rule 23(b)(3) certification.  *Id.*  Here, however, as noted in *Kavu*, Ms. Agne is not seeking individualized damages, but statutory damages that are universal and fixed across the entire class.  Thus, as originally held by this Court, certification is appropriate under Rule 23(b)(2).

PLAINTIFF'S MOTION TO CERTIFY
 (Case No. 2:10-cv-01139-JCC)

23

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

## VII.   CONCLUSION

Defendants engaged in a uniform and illegal marketing campaign that violated the rights of thousands of consumers in both Washington State and across the country.  Defendants' violations of the TCPA and WCPA were caused from the same marketing campaign carried out by OnTime4U and premised upon a legal theory that buying pizza was sufficient enough to establish consent to solicitation.  Plaintiffs challenge this practice.  As the Western District already recognized in *Kavu,* and this year in *Arthur* and *McClintic,* such TCPA and WCPA claims are predominated by common issues of fact and law, which make the class action mechanism superior to flooding this Court with tens of thousands of individual adjudications.  Judicial efficiency, justice, and the black letter requirements of Rule 23 all support certification of this matter.

Respectfully submitted:  February 13, 2012

**HEYRICH KALISH MCGUIGAN PLLC**
1325 Fourth Avenue, Suite 540
Seattle, WA  98101
Tel: (206) 838-2504
Fax: (206) 826-5378

*s/ Donald W. Heyrich*
Donald W. Heyrich, WSBA #23091
*dheyrich@hkm.com*

Daniel Kalish, WSBA #35815
*dkalish@hkm.com*

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
Tel: (206) 414-9950
Fax: (866) 845-6302

*s/ Albert H. Kirby*
Albert H. Kirby, WSBA #40187
*ahkirby@kirby-legal.com*

Attorneys for Plaintiffs

PLAINTIFF'S MOTION TO CERTIFY
 (Case No. 2:10-cv-01139-JCC)

**HEYRICH KALISH MCGUIGAN PLLC**
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

24

## DECLARATION OF SERVICE

I, the undersigned, certify that, on this date, a true copy of the foregoing document will be or has been served on the persons listed below in the manner shown:

Joseph P. Lawrence
Vanessa M. Vanderbrug
LAWRENCE & VERSNEL, PLLC
4120 Columbia Center
701 Fifth Avenue
Seattle, WA  98104

___ Legal Messenger
___ Facsimile
___ United States Mail, First Class
___ Direct Email
_x_ CM/ECF Notification

James Howard
Jessica M. Andrade
DORSEY & WHITNEY LLP
701 Fifth Avenue, Suite 6100
Seattle, WA  98104

___ Legal Messenger
___ Facsimile
___ United States Mail, First Class
___ Direct Email
_x_ CM/ECF Notification

Robert Wisnovsky
270 Wells Fargo Dr.
Jacksonville, OR 97530
Email: rwisnovsky@aol.com

___ Legal Messenger
___ Facsimile
___ United States Mail, First Class
_x_ Direct Email
___ CM/ECF Notification

John S. George
P.O. Box 375
Jacksonville, OR 97530
Email: jnbgeorge@gmail.com

___ Legal Messenger
___ Facsimile
___ United States Mail, First Class
_x_ Direct Email
___ CM/ECF Notification

Daniel J. Gunter
Riddell Williams P.S.
1001 Fourth Ave., Suite 4500
Seattle, WA 98154
Phone: (206) 624-3600

___ Legal Messenger
___ Facsimile
___ United States Mail, First Class
___ Direct Mail
_x__ CM/ECF Notification

Dated:  February 13, 2012

*s/ Donald W. Heyrich*
Donald W. Heyrich, WSBA #23091

PLAINTIFF'S MOTION TO CERTIFY
  (Case No. 2:10-cv-01139-JCC)

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504