THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7        UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
8                   AT SEATTLE

9    MARIA AGNE, ERIN CHUTICH, and        CASE NO. C10-1139-JCC
     JERROD CHUTICH, on their own behalf
10   and on behalf of similarly situated     ORDER GRANTING PLAINTIFF'S
     persons,                                MOTION FOR CLASS
11                                           CERTIFICATION

12                        Plaintiffs,

13              v.

14

15   PAPA JOHN'S INTERNATIONAL,
     INC., et al.,
16
                         Defendants.

17

18        This matter comes before the Court on Plaintiff Maria Agne's[1] motion for class

19   certification (Dkt. No. 219). Having thoroughly considered the parties' briefing and the relevant

20   record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the

21   reasons explained herein. The Court certifies the following classes:

22

23   _____

24        [1] This motion was filed on February 13, 2012 at which point Maria Agne was the only
     named plaintiff. (Dkt. No. 219.) Before briefing was complete, the Court granted Agne leave to
25   amend her complaint to add two additional class representatives. (Dkt. No. 281.) The Court
     previously ruled, however, that it would consider the pending class certification motion only
26   with respect to Plaintiff Agne. (Dkt. No. 339 at 2.) The Court will therefore refer to "Plaintiff" in
     the singular throughout this motion.

<u>National Class</u>
All persons in the United States of America who were sent, to their cellular telephone numbers, at least one unsolicited text message that marketed a Papa John's branded product, good, or service through OnTime4U.

<u>Washington Sub-class</u>[2]
All persons in Washington State who were sent, to their cellular telephone numbers, at least one unsolicited text message that marketed a Papa John's branded product, good, or service through OnTime4U.

# I.    BACKGROUND

Plaintiff alleges that Defendants violated state and federal law when they sent her and thousands of others unsolicited text messages advertising Papa John's pizza products. (Dkt. No. 164 at 5.) Plaintiff asserts claims under the Telephone Consumer Protection Act ("TCPA"), the Washington Consumer Protection Act, and common law negligence doctrine. (*Id.* at 23–25.) Plaintiff moves to certify a national class of all persons in the United States who were sent text messages advertising Papa John's pizza by Defendant OnTime4U and a sub-class of all persons in Washington State who were sent such messages by Defendant OnTime4U. (Dkt. No. 219.) The Court certifies both classes.

Defendants Papa John's International, Inc. and Papa John's USA (collectively, "Papa John's") enters into franchise agreements with independent franchisees throughout the country, which in turn operate Papa John's-branded pizza restaurants. (Dkt. No. 251 at 2.) Franchise agreements govern the relationship between Papa John's as franchisor and its franchisees. (*Id.* at 2.) Pursuant to these agreements, Papa John's has the ability to "request certain types of information" from its franchisees and to insist on compliance with certain "requirements that maintain the value of the Papa John's brand." (*Id.* at 2.) Generally, however, the franchisees maintain control over the day-to-day operations of their restaurants. (*Id.* at 3.)

Papa John's employs Franchise Business Directors ("FBD") who liaise with franchisees

---

[2] The Washington sub-class is certified for the purpose of resolving Plaintiff's state law claims.

in order to "ensure compliance with brand standards" and serve "as a general resource to facilitate franchise relationships." (*Id.* at 4.) Each FBD covers multiple states and multiple franchisees. According to Papa John's, the FBDs do not have authority to control or dictate franchisees' local advertising and marketing decisions and "franchisees make their own local marketing decisions." (*Id.*)

Defendant OnTime4U, a marketing company, offered to increase the profits of Papa John's restaurants by sending text message advertisements to their customers. (Dkt. No. 253 at 2–3.) OnTime4U apparently told Papa John's franchisees that it was legal to send texts without express customer consent because there was an existing business relationship between the customers and the Papa John's restaurants. (Dkt. No. 220, Ex. 1 at 4.) Certain Papa John's franchisees, including at least some of the Rain City Defendants,[3] provided OnTime4U with lists of telephone numbers of individuals who had purchased pizza from them. (Dkt. No. 220, Ex. 1.) Those lists were generated out of the PROFIT system, a proprietary database that Papa John's describes as a "point of sale data entry system." (Dkt. No. 144 at 3.) The PROFIT system is downloaded onto registers in Papa John's restaurants and tracks customer and order information. (*Id.*) OnTime4U removed landline numbers from the lists and sent text messages to the numbers associated with cell phones. (Dkt. No. 152 at 3.)

The text messages OnTime4U sent on behalf of the Papa John's franchisees solicited consumers to purchase Papa John's products. (Dkt. No. 221 at 1–2.) Each message provided the customer with the telephone number corresponding to a particular Papa John's restaurant along with a promotional code. (*Id.*)

In April of 2010, Plaintiff received three messages sent by OnTime4U. (*Id.* at 1.) Plaintiff never gave any Papa John's entity her express consent to send her text messages or make

---

[3] The Court refers to Defendants Rain City Pizza, LLC, Edward Taliaferro, Kevin Sonneborn, Rose City Pizza, LLC, Seattle PJ Pizza, LLC, PJ Sound Pizza, LLC, Papa Washington, LLC, and Papa Washington II, LLC collectively as the "Rain City Defendants."

ORDER GRANTING PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION
PAGE - 3

1    marketing calls to her cell phone. (*Id.* at 2.) Complaints from other customers state that they too

2    received text message advertisements without having given their prior consent to Papa John's or

3    one of the franchisees. (Dkt. No. 153, Ex. 5 at 3 & Ex. 11 at 2.) A former OnTime4U partner

4    testified that, to her knowledge, none of the Papa John's franchisees had received prior consent

5    from its customers to send them text message advertisements. (Dkt. No. 152.) Kevin Sonneborn,

6    one of the Rain City Defendants, testified that customers of his franchise were not asked for their

7    permission to send text messages before their phone numbers were given to OnTime4U. (Dkt.

8    No. 220, Ex. 1 at 3–8.) There is no evidence in the record that any customer who received

9    messages sent by OnTime4U gave such consent.

10         Plaintiff has sued both OnTime4U and the Washington-based Papa John's franchisees

11    that she believes commissioned the messages she received. She has also sued Papa John's (the

12    national franchisor), alleging that its involvement in the OnTime4U marketing campaign renders

13    it liable. There is no evidence that Papa John's contracted directly with OnTime4U. But Plaintiff

14    alleges that Papa John's directed, encouraged, and authorized its franchisees to use OnTime4U's

15    services. Preliminary discovery supports her allegations. Sonnenborn testified that when he told

16    his FBD that he had run a test campaign with OnTime4U and it was not successful, the FBD told

17    him to "try it again." (Dkt. No. 220, Ex. 1 at 6.) Papa John's has produced emails from two

18    different FBDs encouraging their franchisees to try OnTime4U's text blast services. (*See, e.g.*,

19    Dkt. No. 153, Ex 2; Dkt. No. 262, Ex. 2).[4] Moreover there is evidence that OnTime4U made a

20    presentation promoting its services at the fall 2009 Papa John's "Operators Summit" in Las

21    Vegas. (Dkt No. 152 at 7; Dkt. No. 262, Ex. 2 at 3–4.) Needless to say, the precise nature of Papa

22

---

23

24       [4] Defendants ask the Court either to strike Plaintiff's arguments that rely on documents

she filed with the Court after she filed her motion for class certification, or to permit additional

25    briefing. (Dkt. Nos. 330 & 331.) The briefing on this motion is voluminous and was extremely

protracted due to the conduct of both parties, but largely due to Papa John's refusal to cooperate

26    with basic discovery requests. The Court has considered the evidence it believes is relevant to

resolve Plaintiff's motion on the merits and does not find that further briefing is necessary.

John's involvement in franchisee decisions to use OnTime4U services has yet to be definitively established.

Whatever the extent of Papa John's involvement in OnTime4U's text blast program, Papa John's eventually formally disavowed the program. On April 27, 2010, Papa John's sent the following memorandum to all of its corporate stores and franchisees:

> In recent months our Customer Support and Digital Marketing teams have received complaints about unsolicited SMS and MMS messages being sent to mobile phones. Investigation of these messages lead [sic] to a company called OnTime4U, which has been contracting with Papa John's franchisees and corporate operators to send such messages to customers by exporting customer telephone numbers from our PROFIT point of sale system.

> Papa John's Legal and Digital Marketing department do not believe that the transactional business exception applies in this context and have concluded that the practice and process of sending UNSOLICITED messages to mobile devices is most likely ILLEGAL.

(Dkt. No. 153, Ex. 13 at 2.) Papa John's then directed that "all franchisees . . . who have shared customer data (particularly telephone numbers) with OnTime4U . . . take all necessary steps to reclaim this data and/or have the vendor permanently delete it from the vendors [sic] system as well as demand that the vendor not share the data with anyone." (*Id.*) Papa John's also sent a letter directly to OnTime4U in which it demanded that "you return all customer data supplied to you by our franchisees . . . or take measures to immediately and permanently delete this data from your systems and make certain that it can not and will not be copied to, shared with, or forwarded to anyone." (Dkt. No. 153, Ex. 4 at 2.) OnTime4U has told Plaintiff's counsel that it destroyed the call lists at the behest of Papa John's. (Dkt. No. 153 at 3.)

## II.    DISCUSSION

Plaintiff has moved for certification of two classes. Defendants object that Plaintiff lacks standing to pursue her claims and has not satisfied the requirements for class certification set out in Rule 23 of the Federal Rules of Civil Procedure. The Rain City Defendants also argue that

1    permitting Plaintiff to aggregate the potential statutory awards of class members against them

2    would violate due process. The Court addresses Defendant's standing arguments and then turns

3    to class certification.

4    **A. Standing**

5    "In a class action, the plaintiff class bears the burden of showing that Article III standing

6    exists." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011). A plaintiff has

7    Article III standing when the plaintiff suffered an injury in fact, which is fairly traceable to the

8    defendant's challenged conduct, and which is likely to be redressed by a favorable court

9    decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561 (1992). Injury in fact results

10   from the "invasion of a legally protected interest" that is "concrete and particularized." *Id.* at

11   560. "Congress may enact statutes creating legal rights, the invasion of which creates standing,

12   even though no injury would exist without the statute." *Linda R.S. v. Richard D.*, 410 U.S. 614,

13   617 n.3 (1973). In such cases, the standing question is "whether the constitutional or statutory

14   provision on which the claim rests properly can be understood as granting persons in the

15   plaintiff's position a right to judicial relief." *Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th

16   Cir. 2010).

17   The TCPA prohibits making "any call (other than a call made for emergency purposes or

18   made with the prior express consent of the called party) . . . using any automatic telephone

19   dialing system" to "any telephone number assigned . . . to a cellular telephone service." 47

20   U.S.C. § 227(b)(1)(A). The Ninth Circuit has held that "a text message is a call within the

21   meaning TCPA." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009). The

22   TCPA establishes a private right of action for violations, and courts are authorized to award

23   either actual damages or statutory damages of $500 per violation. 47 U.S.C. § 227(b)(3).

24   Defendants make five challenges to Plaintiff's standing to bring claims against some or

25   all of them. (Dkt. No. 247 at 19–20; Dkt No. 243 at 10–13.) The Court will address those

26   challenges in turn.

### 1. Article III Standing

First, Papa John's argues that Plaintiff's injury is not fairly traceable to any Papa John's franchisees other than the Rain City Defendants and Plaintiff therefore lacks prudential standing to represent class members with claims against any other Papa John's franchisee. (Dkt. No. 247 at 18–19.) It is true enough that Plaintiff has no standing to sue franchisees with whom she has had no contact and therefore could not represent a class making claims against those franchisees. *See Easter v. Am. West Fin.*, 381 F.3d 948, 962 (9th Cir. 2004). Plaintiff has not attempted to do so. She has named only OnTime4U, the Rain City Defendants, and Papa John's. Plaintiff has standing to sue OnTime4U on behalf of all class members because OnTime4U sent all of the text messages at issue. Plaintiff argues that Papa John's is liable for those messages either because it directed or encouraged its franchisees to contract with OnTime4U or because it is vicariously liable for the conduct of its franchisees. Plaintiff's lack of standing to sue non-named franchisees does not defeat her standing to sue on behalf of either of her proposed classes.

Second, Papa John's argues that Plaintiff lacks standing to bring claims against it because her injury is not fairly traceable to Papa John's. Papa John's asserts that "Plaintiff's only contacts with Defendants in this case arose from a franchisee-level decision to engage OnTime4U that was made entirely without the involvement of [Papa John's]." (Dkt. No. 247 at 20.) Whether Papa John's had any involvement in franchisee-level decisions to contract with OnTime4U, and if so, the extent of that involvement is a central and disputed issue in the case. Contrary to Papa John's position that it played no role in those decisions, Papa John's has produced documents that indicate that it did play some role in the franchisee-level decisions to hire OnTime4U. (*See* Dkt. No. 153, Ex. 2; Dkt. No. 262, Exs. 1, 2 (email messages from Papa John's FBDs to franchisees encouraging them to consider using OnTime4U to send text message advertisements to customers and attaching PowerPoint presentation from Fall 2009 operators conference).) The Court will not resolve a disputed issue of fact at this preliminary point in the litigation under the guise of deciding whether Plaintiff has standing. Plaintiff alleges that Papa John's is both directly

1    and vicariously liable for the text messages sent by OnTime4U (*see, e.g.*, Dkt. No. 164 at 5, 11–

2    17); she has therefore alleged an injury that is fairly traceable to Papa John's.

3           Third, the Rain City Defendants assert that Plaintiff lacks standing to bring claims against

4    any of them except for Seattle PJ, which apparently is the restaurant that commissioned the

5    messages that Plaintiff received. (Dkt. No. 243 at 11.) Plaintiff's Fourth Amended Complaint,

6    however, alleges that the Rain City Defendants do business from the same location and

7    "intermingle their operational and marketing resources to effect their common purpose" of

8    selling pizza. (Dkt. No. 164 at 10.) Moreover, she alleges that the Rain City defendants are alter

9    egos or agents of each other. (*Id.*) Plaintiff has properly alleged that her injury is fairly traceable

10   to all of the Rain City Defendants.

11          Fourth, the Rain City Defendants argue that class certification is inappropriate because

12   the majority of Plaintiff's proposed national class and Washington sub-class suffered no injury

13   caused by any of the Rain City Defendants and therefore lack standing to be included in any

14   class certified as to them. (Dkt. No. 243 at 12–13.) The Court agrees that Washington class

15   members who were sent messages commissioned by franchisees other than the Rain City

16   Defendants cannot recover anything from the Rain City Defendants. That fact has no bearing on

17   Plaintiff's standing to sue them. The Rain City Defendants argue that a class cannot be certified

18   if any member of the class lacks Article III standing. (Dkt. No. 243 at 12 (citing *Mazza v. Am.*

19   *Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2010)).) It is unclear whether a putative class

20   representative is required to show only that she has standing or must also show that all members

21   of the class have standing. *Compare Mazza*, 666 F.3d at 594 ("No class may be certified that

22   contains members lacking Article III standing." (quoting *Denney v. Deutche Bank AG*, 443 F.3d

23   253, 264 (2d Cir. 2006)))  *with Ellis*, 657 F.3d at 979 ("only one named Plaintiff must meet the

24   standing requirements"). The Court need not reach this issue, however, because every putative

25   class member clearly has standing to sue OnTime4U, and so the Article III standing requirement

26   is satisfied.

1

### 2.  Statutory Standing

2        Papa John's argues that Plaintiff does not have statutory standing to sue under the TCPA

3   because she was not the primary account owner on her shared cellular plan and did not pay the

4   bill. (Dkt. No. 247 at 20.) Plaintiff was an authorized user of her shared cellular plan when the

5   text messages were sent, but her ex-husband was the primary account holder. (Dkt. No. 299, Ex.

6   4 at 1; Dkt. No. 355 at 2.)

7        Plaintiff correctly argues that the case law does not unambiguously require that a plaintiff

8   own the relevant phone or account in order to have standing to sue under the TCPA. Moreover,

9   she argues, she has standing to sue under the TCPA because her privacy interests are the very

10   ones that Congress intended to protect when it enacted the TCPA. Plaintiff avers that: (1) she has

11   been the exclusive user of her cell number since 2002, years before sharing a cellular service

12   plan with her ex-husband; (2) she owned the cell phone which received the message; and (3) she

13   was the intended recipient of the texts. (Dkt. No. 319 at 4.)

14        The parties do not appear to dispute that Plaintiff was the intended recipient of the text

15   messages.[5] On that basis alone, there is authority for finding that she has standing. *See, e.g.,*

16   *Cellco P'ship v. Wilcrest Health Care Mgmt. Inc.*, No. C09-3534-MLC, 2012 WL 1638056, at

17   *7 (D.N.J. May 8, 2012) (noting that "a burgeoning body of case law" establishes that the

18   "intended recipient" of a call has statutory standing to bring suit under the TCPA). Moreover, the

19   Court agrees with other district courts that have concluded that a person who is the authorized

20   and sole user of a cellular telephone number and receives unsolicited calls (or text messages) at

21   that number has standing to pursue a TCPA claim. *See, e.g.*, *D.G. ex rel. Tang v. William W.*

22   *Siegel & Assocs., Attorneys at Law*, 791 F. Supp. 2d 622, 625 (N.D. Ill. 2011) (finding that

23   plaintiff had statutory standing to sue under the TCPA because defendant intended to call

24   plaintiff's cell number, plaintiff actually received the calls, and plaintiff was the "regular user

25   _____

26        [5] Plaintiff had previously used her cell phone to order pizza from a Papa John's
      restaurant. This appears to be how her number ended up on one of the text blast lists.

ORDER GRANTING PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION
PAGE - 9

and carrier of the phone"). There is no dispute that the messages were sent to Plaintiff's cellular telephone number and that she received them. Her privacy is the interest that the TCPA was intended to protect. She therefore has statutory standing.

**B. Rule 23 Certification**

Pursuant to Rule 23(a) of the Federal Rules of Civil Procedure, a court may certify a class only if the following four prerequisites are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23 sets forth more than a mere pleading standard. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). A plaintiff seeking class certification must "affirmatively demonstrate" compliance with Rule 23 and "be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* The Court must engage in a "rigorous analysis" to determine whether the Rule 23(a) prerequisites are met, which will frequently "entail some overlap with the merits of the plaintiff's underlying claim." *Id.* A court examines the merits of the underlying claim "only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims." *Ellis*, 657 F.3d at 983 n.8 (citing *Dukes*, 131 S. Ct. at 2552 n.6).

In addition to the Rule 23(a) requirements, courts have also recognized that ensuring that the members of the class can be ascertained with "reference to objective criteria" is an implicit requirement for class certification. *See* Newberg on Class Actions § 3:1. Defendants argue that Plaintiff's proposed class cannot be ascertained. (Dkt. No. 243 at 13.) The Court will address that implicit requirement and then turn to the express requirements of Rule 23(a).

**1. Ascertainable Class**

A class definition should be "precise, objective and presently ascertainable." *O'Connor v. Boeing N. Am., Inc.,* 184 F.R.D. 311, 319 (C.D. Cal. 1998). While the identity of each class

1  member need not be known at the time of certification, the class definition must be "definite

2  enough so that it is administratively feasible for the court to ascertain whether an individual is a

3  member." *Id.* It is not fatal for class definition purposes if a court must inquire into individual

4  records, so long as "the inquiry is not so daunting as to make the class definition insufficient."

5  *Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 348 (N.D. Ill. 2008) (internal quotation

6  marks and citation omitted).

7        The Rain City Defendants are not challenging the precision or definiteness of the class

8  definition. Instead, they argue that it is not possible to identify the individuals who fit that

9  definition because there are "no records indicating to which cell phone numbers OnTime4U sent

10 emailed text message coupons at the request of [the Rain City Defendants]." (Dkt. No. 243 at

11 14–15.) Plaintiff responds that the Rain City Defendants have already produced some documents

12 that can be used to identify class members and that the class lists can be reconstructed by

13 exporting names from Papa John's PROFIT system and then removing landline numbers from

14 the list so that only cellular telephone numbers remain. (Dkt. No. 304 at 12.) The Court notes

15 that Plaintiff's assertion is nearly identical to one made by Papa John's in its response to a

16 motion for sanctions for evidence spoliation. (Dkt. No. 292 at 2 (stating that the OnTime4U call

17 lists created by the Rain City Defendants "can simply be recreated using the same parameters

18 originally used").) Defendants cannot have it both ways.

19        Ultimately, the Rain City Defendants are arguing that identifying class members and

20 providing them with notice may be difficult. These concerns are more properly addressed after

21 class certification, except to the extent that they create manageability problems that should be

22 considered under Rule 23(b)(3). *See* Newberg on Class Actions § 4:35 ("While notice

23 considerations technically do not come into play until a class is certified, it is proper for a court

24 to consider management difficulties associated with class notice at the precertification

25

26

ORDER GRANTING PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION
PAGE - 11

1    stage . . . ."). The Court discusses manageability later in this order.[6]

2          The class definition provides sufficiently precise and objective criteria to determine class

3    membership. The implicit prerequisite of ascertainability is therefore satisfied.

4          **2.   Numerosity**

5          Before a class can be certified, a court must determine that it is "so numerous that joinder

6    of all members is impracticable." Fed. R .Civ. P. 23(a)(1). There is no set numerical cutoff used

7    to determine whether a class is sufficiently numerous; courts must examine the specific facts of

8    each case to evaluate whether the requirement has been satisfied. *See Gen. Tel. Co. v. EEOC,*

9    446 U.S. 318, 329–30 (1980). "In general, courts find the requirement satisfied when a class

10   includes at least 40 members." *Z.D. ex rel. J.D. v. Group Health Coop.*, C11-1119-RSL, 2012

11   WL 1977962, at *3 (W.D. Wash. June 1, 2012).

12         Plaintiff asserts the Rain City Defendants provided OnTime4U with over 68,000 phone

13   numbers and OnTime4U sent text messages to a large percentage of those phone numbers. (Dkt.

14   No. 219 at 16; Dkt. No. 318, Exs. 5–7.) In response, Papa John's makes only the unavailing

15   ascertainability arguments previously addressed. There are hundreds or thousands of potential

16   class members in this action. Joinder would be impracticable. Numerosity is satisfied.

17         **3.   Commonality**

18         The Court concludes that there are "questions of law or fact common to the class." Fed.

19

20   ─────────────────────

21         [6] Even if Defendants are ultimately unable to produce complete class lists, other types of

22   notice may be able to correct for this deficiency. *See, e.g. CE Design v. Beaty Constr. Inc.*, No.
     07 C 3340, 2009 WL 192481, at *4 (N.D. Ill. Jan. 26, 2009) (certifying a class where the list of

23   victims that were illegally sent an advertisement via fax had been destroyed and noting that
     "potential plaintiffs that come forward will have to represent to the Court—via affidavit and

24   under the penalty of perjury—that they received the fax on the dates in issue"). Furthermore, it
     would be unfair to deny class certification because of the potential difficulty of identifying the

25   class members where that difficulty is mostly due to the fact that OnTime4U destroyed the call
     lists that it used. *See id.* at *3–4 (refusing to "bar class certification because the defendant has

26   lost or destroyed the list of its alleged victims").

ORDER GRANTING PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION
PAGE - 12

1    R. Civ. P.  23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members

2    have suffered the same injury." *Dukes*, 131 S. Ct. at 2551. "This does not mean merely that they

3    have all suffered a violation of the same provision of law." *Id.* Instead, the Court must find that

4    determination of a common contention's truth or falsity "will resolve an issue that is central to

5    the validity of each one of the claims in one stroke." *Id.*

6        The essence of Plaintiff's claims is that Papa John's and the Rain City Defendants used

7    OnTime4U to send thousands of text messages to the class members without their consent in

8    violation of the TCPA. Determining liability on those claims will require resolving numerous

9    common questions of law and fact, including: (1) whether OnTime4U's contention that buying a

10   pizza is sufficient to establish a business relationship is valid as a matter of law; (2) whether an

11   established business relationship is a defense to sending text messages to a cellular phone

12   without express consent under the TCPA; (3) whether OnTime4U's system of transmission

13   qualifies as an "automatic telephone dialing system" under the TCPA; (4) whether Papa John's

14   controlled, participated in, or authorized OnTime4U's text blast campaign; and (5) whether Papa

15   John's is vicariously liable for the acts of its franchisees.

16       Because Plaintiff's allegation is not merely that all class members suffered a violation of

17   the TCPA, but rather that all class members were sent substantially similar unsolicited text

18   messages by the same defendants, using the same automatic dialing technology, commonality is

19   satisfied. For example, resolving the legal question of whether a customer's prior purchase of

20   pizza can be construed as express consent to receive text message advertisements under the

21   TCPA is a common question, and the validity of one of Defendants' consent defenses can

22   therefore be resolved in one stroke. *See Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 647 (W.D.

23   Wash. 2007) ("whether the recipients' inclusion in the Manufacturer's News database constitutes

24   express permission to receive advertisements via facsimile is a common issue").

25       Papa John's argues that this is not a common question because "the putative class

26   members would have had innumerable discussions with scores of different franchisee locations,

ORDER GRANTING PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION
PAGE - 13

1    during which consent to receive messages could have been received." (Dkt. No. 247 at 24.)

2    Defendants' speculation that customers may have given their express consent to receive text

3    message advertising is not sufficient to defeat class certification. *See Silbaugh v. Viking*

4    *Magazine Servs.*, 278 F.R.D. 389, 393 (N.D. Ohio 2012); *Van Sweden Jewelers, Inc. v. 101 VT,*

5    *Inc.*, No. C10-253, 2012 WL 4127824 (W.D. Mich. Sept. 19, 2012). Plaintiff has put forward

6    persuasive evidence that Papa John's franchisees did not obtain express consent from customers

7    before sending text messages. *See Ellis*, 657 F.2d at 982–83 & n.8 (district court should judge the

8    persuasiveness of the evidence of commonality put forward by plaintiff but not determine

9    whether class members can prevail on the merits of their claims). This evidence includes

10   Plaintiff's testimony that she did not consent to but nevertheless received text messages (Dkt.

11   No. 221 at 2–4), complaints from other customers who had the same experience (*see, e.g.*, Dkt.

12   No. 153, Ex. 5 at 3 & Ex. 11 at 2), and documents produced by Papa John's indicating that

13   franchisees relied on OnTime4U's assertion that the messages were legal "because of a

14   'transactional relationship' with a previous customer" (*id.*, Ex. 13 at 2). In response, Defendants

15   offer only a bare assertion of individualized issues of consent, unsupported by a single document

16   showing that the Rain City Defendants or any other franchisee ever obtained or documented such

17   consent from any putative class member.

18       Similarly, the question of whether Papa John's can be held liable for the conduct of its

19   franchisees is a common question whose answer is "apt to drive resolution of the case." *Dukes*,

20   131 S. Ct. at 2551. Papa John's argues that deciding whether Papa John's was sufficiently

21   involved in the marketing decisions of scores of different franchisees to establish its liability

22   would require individual inquiries that undermine commonality. In doing so, Papa John's

23   analogizes to *Dukes*, comparing Plaintiff's claim to the allegation that Wal–Mart "national"

24   caused or encouraged the local store managers to make discriminatory employment decisions.

25   But that is not what the *Dukes* plaintiffs alleged—and that is why certification of a national class

26   in that case was not proper. *See, e.g.*, *Dukes*, 131 S.Ct. at 2548 ("plaintiffs . . . do not allege that

1   Wal–Mart has any express corporate policy against the advancement of women"); *id.* at 2254

2   ("The only corporate policy that the plaintiffs' evidence convincingly establishes is Wal–Mart's

3   'policy' of allowing discretion by local supervisors over employment matters."). In this case,

4   Plaintiff has come forward with affirmative evidence that Papa John's had at least a hand—and a

5   common hand at that—in franchisees' decisions to enlist OnTime4U to send text messages to

6   their customers. For example, Plaintiff has submitted email messages from Papa John's FBDs to

7   multiple franchisees encouraging those franchisees to commission text messages from

8   OnTime4U. (Dkt. No. 153, Ex. 2; Dkt. No. 262, Ex. 2.) She has also submitted evidence that

9   OnTime4U was allowed to make a marketing presentation to Papa John's franchisees at its Fall

10  2009 conference with franchisees. (Dkt. No. 262, Ex. 2.)

11       Thus, Plaintiff has alleged far more than an amorphous "corporate culture" at Papa

12  John's in favor of "blasting" customers with text messages. *Cf., e.g., Dukes*, 131 S.Ct. at 2548.

13  Papa John's speculation that the shape, color, or force of its hand in the sending of the text

14  messages may have been different depending on the franchisee at issue—with no actual evidence

15  that it was—does nothing to bring this case closer to *Dukes*. Whether Plaintiff's claim against

16  Papa John's is meritorious is a question to be resolved later. The issue at this stage is whether the

17  evidence Plaintiff has produced suggests that the extent of Papa John's involvement in the

18  OnTime4U text blast campaign is a common question of liability that can be resolved "in one

19  stroke" and "is central to the validity of . . . the [class] claim[] [against Papa John's]." *Dukes*,

20  131 S.Ct. at 2551. The Court concludes that Papa John's involvement in the campaign is a

21  common question and class certification is proper. The Court adds that Papa John's assertion that

22  resolving this common question will require individual examination of "many interactions"

23  between Papa John's employees and its franchisees (Dkt. No. 247 at 23) belies its position that it

24  played little or no role in franchisees' marketing decisions (*Id.* at 20).

25       **4.  Typicality**

26       The next factor that the Court must consider is typicality. Rule 23(a)(3) provides that "the

1    claims or defenses of the representative parties [must be] typical of the claims or defenses of the

2    class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same

3    or similar injury, whether the action is based on conduct which is not unique to the named

4    plaintiffs, and whether other class members have been injured by the same course of conduct."

5    *Ellis*, 657 F.3d at 984 (internal quotation marks omitted). The typicality requirement serves to

6    ensure that "the interest of the named representative aligns with the interests of the class." *Wolin*

7    *v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).

8            Plaintiff's claims are typical of the claims of the class. Her claims, like all class

9    members' claims, arise from text marketing campaigns commissioned by Papa John's

10   franchisees and executed by the same marketing vendor—OnTime4U. *See Kavu,* 246 F.R.D. at

11   648 (finding typicality established where plaintiff's claims arose from the same alleged course of

12   conduct and were based on the same legal theories).

13           Papa John's argues that Plaintiff's claims are not typical because there are "dramatic"

14   factual differences between Plaintiff and the class and she is subject to defenses unique to her.

15   Papa John's points to the following: (1) that Plaintiff received messages from the Rain City

16   Defendants "before anyone at [Papa John's] had ever even heard of OnTime4U"; (2) that the text

17   messages she received "arose out of Plaintiff's reimbursed purchase for work"; and (3) that

18   Plaintiff's claim "belongs in part, if not entirely, to her ex-husband."[7] (Dkt. No. 247 at 25.)

19           Plaintiff received the text message advertisements at issue in April 2010. (Dkt. No. 164 at

20   2.) Jim McDonnell, the Senior Manager for Digital Media and Emerging Channels at Papa

21   John's states in his declaration that his investigations of customer complaints about texts led him

22   to John George at OnTime4U in March 2010. (Dkt. No. 250 at 2.) On March 22, 2010,

23   McDonnell sent George an email setting out concerns about the OnTime4U text messages. (*Id.*,

24   Ex. A.) Three other Papa John's employees, including the Vice President for Digital Marketing,

25   _____

26       [7] Papa John's makes nine challenges to typicality. Those not addressed here are addressed elsewhere in this order.

ORDER GRANTING PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION
PAGE - 16

were copied on that email and on George's response sent the following day. (*Id.*; Dkt. No. 153, Ex. 14.) As this all occurred before the offending messages were sent to Plaintiff, Papa John's first assertion is patently untrue and does not merit further attention.

With respect to Papa John's second argument, the Court does not see how Plaintiff's having been reimbursed by her employer for her Papa John's pizza orders has any bearing on the issues in the case. Papa John's argument that Plaintiff's claims belong to her ex-husband has been refuted by the documents Plaintiff submitted in reply, showing that she and her husband separated before her causes of action against the Defendants accrued. (Dkt. No. 319, Ex. 1.)

**5.  Adequacy of Representation**

Next, the Court considers whether Plaintiff has satisfied the adequacy requirement. Rule 23(a)(4) requires that the named representative fairly and adequately protect the interests of the class. "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of judgment which binds them." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (citing *Hansberry v. Lee,* 311 U.S. 32, 42–43 (1940)). To determine legal adequacy, the Court must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis*, 657 F.3d at 985. "Conflicts of interest may arise when one group within the larger class possesses a claim that is neither typical of the rest of the class nor shared by the class representative." *Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th Cir. 2010).

There is no serious dispute that Plaintiff and class counsel are willing and able to vigorously prosecute this suit on behalf of the class members. Defendants argue, however, that Plaintiff has a conflict of interest with the non-Washington class members because they may possess state law claims that she does not have or purport to prosecute. (Dkt. No. 247 at 28.) The Court does not agree that the fact that Plaintiff does not share potential state law claims that members of a national class would have under the laws of the jurisdictions where they reside

renders her inadequate. The *Hesse* case does not stand for that proposition; rather it held that a class representative who agreed to *a broad release* of state law claims he did not share with other class members was inadequate. 598 F.3d at 589 (emphasis added). Consistent with *Hesse*, the Court will not entertain any proposed settlement that purports to release on behalf of absent class members claims that Plaintiff does not share. Plaintiff's inability to prosecute all of the national class members' potential state law claims does not undermine her adequacy to represent those class members in their federal TCPA claims against Papa John's and OnTime4U. And nothing about this certification order stops the national class members who reside in other states from suing the Defendants or non-party franchisees in those states, in separate actions, for violating those states' laws. That Plaintiff is inadequate to represent them in those hypothetical state actions does not render her inadequate to represent them on their federal claims here.

## C. Rule 23(b)(3)

A plaintiff who satisfies Rule 23(a) prerequisites must also demonstrate that the case can be maintained as a class action under Rule 23(b). Plaintiff argues for class certification under Rule 23(b)(3).[8] (Dkt. No. 219 at 21.) To certify a class under Rule 23(b)(3), the court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court discusses predominance and then turns to superiority.

### 1. Predominance

Although related to the Rule 23(a)(2) commonality analysis, the Rule 23(b)(3) predominance analysis is "far more demanding," and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Amchem Prods., Inc. v.*

---

[8] Alternatively, Plaintiff seeks certification pursuant to the second prong of Rule 23(b). (Dkt. No. 219 at 21.) Because the Court certifies the classes under Rule 23(b)(3), the Court does not analyze Plaintiff's Rule 23(b)(2) arguments.

1    *Windsor*, 521 U.S. 591, 623–24 (1997). A proposed class that satisfies the Rule 23(a)(2)

2    commonality prerequisite may nonetheless fail the predominance test. *See id.*

3          Papa John's argues that there are three areas where individualized inquiries will

4    overwhelm common issues: (1) consent; (2) questions regarding who actually received

5    messages; and (3) inquiries into Papa John's liability for various franchisees' text campaigns.

6    (Dkt. No. 247 at 31–34.) The second and third arguments are fully addressed in the Court's

7    analysis of Rule 23(a)(2) commonality. The Court adds that consent appears to the Court to be a

8    non-issue. Papa John's is in the best position to come forward with evidence of individual

9    consent and will not be precluded from presenting admissible evidence of individual consent if

10   and when individual class members are permitted to present claims. *See Targin Sign Sys. Inc. v.*

11   *Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894, 898 (N.D. Ill. 2010); *see also Silbaugh*,

12   278 F.R.D. at 393 (without some evidence of individual consent, defendant cannot realistically

13   argue that individual issues regarding consent outweigh commonality).

14         The Court rejects the legal foundation for Papa John's argument that individualized

15   issues regarding whether recipients were charged for the text message advertisements will

16   overwhelm common questions. The Court agrees with the careful statutory analysis of several

17   other federal district courts and their conclusions that the TCPA does not require plaintiffs to

18   show that they were charged for text message advertisements sent to their cellular phones. *See*

19   *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1009–10 (N.D. Ill. 2010)

20   ("[T]he plain language of the TCPA does not require Plaintiff to allege that he was charged for

21   the relevant call at issue in order to state a claim pursuant to [47 U.S.C.] § 227."); *Gutierrez v.*

22   *Barclays Group*, No. 10-CV-1012-DMS, 2011 WL 579238, at *6 (S.D. Cal. Feb. 9, 2011)

23   ("Plaintiffs need not show that they were charged for . . . text messages to their cellular phones to

24   prevail on their TCPA claims."); *Smith v. Microsoft Corp.*, No. 11-CV-1958 JLS-BGS, 2012 WL

25   2975712, at *5 (S.D. Cal. July 20, 2012) (holding that the TCPA "does not limit protection to

26   instances in which a plaintiff is charged individually, or even incrementally, for each text

1   message"). Accordingly, class members are not required to show that they were charged for the

2   text message advertisements they received.

3         Plaintiff has established predominance.

4         **2.      Superiority**

5          Rule 23(b)(3) sets forth four factors relevant to determining superiority:

6   (A) the class members' interests in individually controlling the prosecution of
    defense of separate actions; (B) the extent and nature of any litigation concerning

7   the controversy already begun by or against class members; (C) the desirability or
    undesirability of concentrating the litigation of the claims in the particular forum;

8   and (D) the likely difficulties in managing a class action.

9   Fed. R. Civ. P. 23(b)(3)(A)–(D). Consideration of these factors must "focus on the efficiency and

10  economy elements of the class action so that cases allowed under subdivision (b)(3) are those

11  that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research*

12  *Inst., Inc.,* 253 F.3d 1180, 1190 (9th Cir. 2001).

13        "Where damages suffered by each putative class member are not large" the first factor

14  "weighs in favor of certifying a class action." *Id.* The policy "at the very core of the class action

15  mechanism is to overcome the problem that small recoveries do not provide the incentive" for

16  individuals to bring claims. *Amchem Prods.*, 521 U.S. at 617. Papa John's argues that the $500

17  statutory damages provision in the TCPA provides sufficient incentive for individuals to bring

18  claims in small claims courts and that the first factor therefore weighs against certification. The

19  Court does not agree and finds that the first factor weighs in favor of class certification. Five

20  hundred dollars is not sufficient to compensate the average consumer for the time and effort that

21  would be involved in bringing a small claims action against a national corporation like Papa

22  John's. *See, e.g.*, *Kavu*, 246 F.R.D. at 650 (holding that claims under the TCPA and the

23  Washington CPA are sufficiently small such that they are unlikely to be litigated individually);

24  *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-CV-01413-W-AJB, 2008 WL 4155361, at *8 (S.D. Cal.

25  Sept. 5, 2008) (holding in a TCPA action that "[t]he class action procedure is the superior

26  mechanism for dispute resolution in this matter. The alternative mechanism, permitting

1  individual lawsuits for a small statutory penalty, would be costly and duplicative.").

2      Defendants have not advised the Court of any other TCPA suits arising from text

3  message advertisements sent by OnTime4U on behalf of Papa John's. Accordingly, the second

4  factor also weighs in favor of finding superiority. Defendants argue that the third factor weighs

5  against finding superiority because certification of a national class would require witnesses from

6  across the country to travel to this district for trial. This concern is outweighed by the net

7  conservation of judicial resources that will result from consolidation of all claims by consumers

8  who received text messages from OnTime4U on behalf of Papa John's franchisees.

9      Papa John's and the Rain City Defendants both argue that determining whether putative

10  class members actually received messages sent by OnTime4U will require individual

11  determinations, making the class unmanageable. (Dkt. No. 243 at 14–15; Dkt. No. 247 at 34–36.)

12  "If each class member has to litigate numerous and substantial separate issues to establish his or

13  her right to recover individually, a class action is not 'superior.'" *Zinser*, 253 F.3d at 1192.

14  Defendants point out that even if the OnTime4U distribution lists can be reconstructed,

15  OnTime4U often had technical difficulties actually delivering messages and therefore

16  determining whether a person received a text message requires an individualized determination.

17  For example, Defendants have presented evidence that Sprint did not deliver the messages to any

18  of its cellular customers. (Dkt. No. 253 at 5.) The Court does not agree that determining whether

19  individuals received messages will be as difficult as Defendants argue. If the Defendants provide

20  persuasive evidence that a specific phone carrier never delivered OnTime4U's text messages,

21  potential class members whose numbers are associated with that carrier will be purged from the

22  class lists. Whether other consumers received the messages can be determined using claim forms

23  and phone records, as well as any records Plaintiff may be able to obtain from OnTime4U. The

24  Court also notes that should this issue prove unmanageable—something the Court does not

25  anticipate—the Court "retains the flexibility to address problems with a certified class as they

26  arise, including the ability to decertify." *United Steel Workers Int'l Union v. ConocoPhillips Co.*,

593 F.3d 802, 807 (9th Cir. 2010).

### i.   Due Process Concerns

The Rain City Defendants contend that a class action is not the superior method of adjudication because the "pursuit of absurdly large, accumulated statutory penalties against these small defendants ostensibly for unidentifiable class members who suffered little or no economic damage, would violate Due Process." (Dkt. No. 243 at 17–19.) The Ninth Circuit has held that the size of a potential award of statutory damages is not a valid basis for refusing to certify a class action. In *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010), the court reversed a district court's refusal to certify a class claiming violations of the Fair and Accurate Credit Transactions Act. The district court had found certification inappropriate because the class action would "render the magnitude of the defendant's liability enormous." *Id.* at 721. The Court found "that such a consideration is not an appropriate reason to deny class certification under Rule 23(b)(3)" and further stated that "[i]f the size of a defendant's potential liability alone was a sufficient reason to deny class certification . . . the very purpose of Rule 23(b)(3)—to allow integration of numerous small individual claims into a single powerful unit—would be substantially undermined." *Id.* at 721–22 (quotation marks and citation omitted). Although the TCPA was not the statutory provision at issue in *Bateman*, the court's reasoning applies with equal force here. *See also, e.g.*, *Kavu*, 246 F.R.D. at 650. The size of Defendants' potential liability is not a valid reason to deny class certification.

In sum, the Court finds that the class action procedure is the superior mechanism for resolving the claims of consumers who received text message advertisements sent by or at the instruction of the Defendants.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for class certification (Dkt. No. 219) is GRANTED. The Court hereby certifies the following classes:

National Class

All persons in the United States of America who were sent, to their cellular telephone numbers, at least one unsolicited text message that marketed a Papa John's branded product, good, or service through OnTime4U.

Washington Sub-class

All persons in Washington State who were sent, to their cellular telephone numbers, at least one unsolicited text message that marketed a Papa John's branded product, good, or service through OnTime4U.

DATED this 9th day of November 2012.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION
PAGE - 23