THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARIA AGNE, ERIN CHUTICH, and JERROD CHUTICH, on their own behalf and on behalf of other similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>PAPA JOHN'S INTERNATIONAL, INC., a Delaware corporation; PAPA JOHN'S USA, INC., a Kentucky corporation; RAIN CITY PIZZA, L.L.C., an unknown business entity; EDWARD TALIAFERRO, individually and d/b/a RAIN CITY PIZZA, L.L.C., GREAT WESTERN DINING, and ROSE CITY PIZZA, L.L.C.; KEVIN SONNEBORN, individually and d/b/a RAIN CITY PIZZA, L.L.C., GREAT WESTERN DINING, ROSE CITY PIZZA, L.L.C., SEATTLE PJ PIZZA, L.L.C., PJ SOUND PIZZA, L.L.C., PAPA WASHINGTON, L.L.C., and PAPA WASHINGTON II, L.L.C.; ROSE CITY PIZZA, L.L.C., an Oregon limited liability company; SEATTLE PJ PIZZA, L.L.C., a Washington limited liability company; PJ SOUND PIZZA, L.L.C., a Kansas limited liability company; PAPA WASHINGTON, L.L.C., a Washington limited liability company; PAPA WASHINGTON II, L.L.C., an unknown business entity; ON TIME 4 U, L.L.C., an unknown business entity; ROBERT WISNOVSKY, individually and d/b/a ON TIME 4 U, L.L.C.; and JOHN S. GEORGE, individually and d/b/a ON TIME 4 U, L.L.C.,<br><br>Defendants. | Case No. 2:10-cv-01139-JCC<br><br>**MOTION FOR APPROVAL OF INCENTIVE AWARDS; MOTION FOR APPROVAL OF ATTORNEYS' FEES, AND COSTS**<br><br>NOTE ON MOTION CALENDAR:<br>October 22, 2013 at 9:00 a.m. |

MOTIONS FOR APPROVAL OF INCENTIVE AWARDS,
ATTORNEYS' FEES, AND COSTS
(Case No. 2:10-cv-01139-JCC)

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

**TABLE OF CONTENTS**

I. MOTION FOR APPROVAL OF INCENTIVE AWARDS .......................................................... 1

    A.  Class Representatives Risked and Endured Much to Obtain Relief for the Class………..1

    B.  The Proposed Incentive Awards Reasonably Compensate Class Representatives……….4

II. MOTION FOR APPROVAL OF ATTORNEY FEES AND COSTS ...................................... 5

    A.  Years of Effort were Spent to Achieve the Results which now Benefit the Class……….5

        1.  Class Counsel engaged in vigorous motion practice over the pleadings. ..................... 5

        2.  Class Counsel engaged in vigorous and hard fought discovery practice. ..................... 6

        3.  Class Counsel engaged in hotly contested class certification motion practice. ............ 7

        4.  Class Counsel engaged in lengthy settlement negotiations to resolve this case. .......... 7

    B.  Application of the Percentage-of-the-Fund Method is Warranted………………………. 8

    C.  Percentage-of-the-Fund Analysis Supports Counsel's Fee Request……………………..10

        1.  Class Counsel obtained an excellent result for the class............................................ 10

        2.  Class Counsel faced substantial risk of non-payment................................................. 11

        3.  Class Counsel's fees are below the market rate.......................................................... 12

        4.  Contingent nature of representation and opportunity costs support fee. .................... 12

        5.  Reactions from the Class support the fee.................................................................... 13

    D.  A Lodestar Cross-Check Confirms the Reasonableness of the Attorney Fees…………..13

    E.  The Payment of Costs is Fair and Reasonable…………………………………………...14

MOTIONS FOR APPROVAL OF INCENTIVE AWARDS,
ATTORNEYS' FEES, AND COSTS
(Case No. 2:10-cv-01139-JCC)
Page i

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

# I. MOTION FOR APPROVAL OF INCENTIVE AWARDS

On June 14, 2013, the Court granted Plaintiffs' motion for preliminary approval of a class settlement reached between Plaintiffs, the Papa John's defendants, and the Rain City defendants. *See* Dkt. No. 373. This class settlement provided a common fund with a total value of $16,335,000. See Dkt. No. 372-1, p. 17:12-24. Of this sum, $2,860,000 is being paid or is else available to class members "with notice or upon application" in the form of Merchandise Vouchers valued at $13.00 each. See id. Additionally, $11,000,000 will be "made available to pay Cash Awards to [class] members who submit Valid Claims." *See id*. Each "Merchandise Voucher will allow [class members] to obtain one large one-topping pizza". *See id*., p. 6:19-23. And each Cash Award will "under no circumstances be less than Fifty Dollars ($50.00)."

The Court's June 14, 2013 order also provided Plaintiffs until thirty (30) days after the date notice is first sent to the class to petition for the Court for an incentive award. *See* Dkt. No. 373 at 4:19-22. This was because the class settlement agreement provides for "[a] Service Award of Twenty-Five Thousand ($25,000.00) to Class Representatives for their service in bringing this Action[.]" See Dkt. No. 372-1, p. 17:22-23. The settlement agreement proposes that this award "be distributed among [the Class Representatives] as follows: (1) $23,000 to Maria Agne; (2) $1,000.00 to Erin Chutich; and (3) $1,000.00 to Jerrod Chutich[.]" See id., p. 20:1-4.

On July 12, 2013, notice was first sent to the class in accord with the Court's order. *See Decl. Kirby*, ¶ 3. Therefore, Plaintiffs now move the Court to approve incentive awards for them as provided in the settlement agreement.

**A.     Class Representatives Risked and Endured Much to Obtain Relief for the Class**

For most of this case, Maria Agne was the sole plaintiff attempting to seek relief on behalf of the class. *See* Dkt. Nos. 1 (Notice of Removal), 21 (First Amended Complaint), 72 (Second Amended Complaint), 120 (Third Amended Complaint), and 164 (Fourth Amended Complaint). Because of the large number of class members and thereby the large amount of money at stake given the statutory damages at issue, defendants attempted to create as much personal risk and difficulties for Ms. Agne in an apparent attempt to convince her to abandon the

MOTIONS FOR APPROVAL OF INCENTIVE AWARDS, ATTORNEYS' FEES, AND COSTS
(Case No. 2:10-cv-01139-JCC)
Page 1

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

class's claims. Thus, if Ms. Agne had not resisted such intimidation by putting the interests of the class ahead of her own, this case would have ended long before the class obtained any relief.

Soon after Ms. Agne served Papa John's with the lawsuit, Papa John's sent her a letter, through counsel, threatening Rule 11 and RCW 4.28.185 sanctions if she proceeded with the lawsuit against it. *See Decl. Kirby*, ¶ 4, Ex. 1. Later, some OnTime4U defendants dared to track down Ms. Agne's undisclosed home address and to mail her two letters threatening financial ruin they would inflict upon her and her family if she did not abandon the class's claims. *See* Dkt. Nos. 111-1 *and* 115-1. The Court ultimately issued a Temporary Restraining Order and then a Preliminary Injunction because the conduct of the OnTime4U defendants "was improper and intolerable." *See* Dkt. No. 117 at 2:11-12; *also see* Dkt. No. 113. But such orders could not remove the very real risk that all of the defendants would come after Ms. Agne personally to recover their attorney's fees and costs in the event that she was unsuccessful in advancing the class's claims. Indeed, the one defendant who was involuntarily dismissed from the case did in fact seek to recover its attorney's fees and costs from Ms. Agne simply because she was trying to advance the class's interests over her own. *See*, *e.g.*, Dkt. No. 175 at 11:3-4.

After defendants made their threats for sanctions, attorney's fees, and costs, they next made aggressive efforts to engage in invasive discovery practices which related to issues the Court ultimately found to be meritless. For example, Ms. Agne only alleged that she received three text messages from the defendants in April 2010. Nonetheless, Papa John's compelled Ms. Agne to produce more than a year of her unredacted cellular telephone records and an expert report detailing virtually all contents of her private cellular telephone. *See*, *e.g.*, Dkt. No. 242 at 1:21 – 2:1. Thus, defendants obtained comprehensive information about every personal call which Ms. Agne made over a year. *See id*. Defendants' arguments about the potential relevance of these documents ultimately rang hollow when the Court later ruled that Ms. Agne's bare receipt of three text messages in April 2010 provided her with sufficient standing to recover statutory damages under the Telephone Consumer Protect Act. *See* Dkt. No. 366 at 6:4 - 10:3. Accordingly, defendants unnecessarily compelled Ms. Agne to sacrifice her privacy to advance

MOTIONS FOR APPROVAL OF INCENTIVE AWARDS,
ATTORNEYS' FEES, AND COSTS
(Case No. 2:10-cv-01139-JCC)
Page 2

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

the class's claims. No one would have expected Ms. Agne to surrender so much of her privacy to litigate her claims individually. *See id*. at 20:19-22 ("Five hundred dollars is not sufficient to compensate the average consumer for the time and effort that would be involved in bringing a small claims action against a national corporation like Papa John's.").

Next, despite the fact that Ms. Agne's personal knowledge related to the case was fairly limited to the three text messages that she received in April 2010, defendants subjected her to an arduous, full-day deposition. Dkt. No. 319, p. 2:18-19; Dkt. No. 343 at 2:1-7. Mr. Agne would almost certainly not have had such a deposition experience if she were only bringing suit on behalf of herself. *See*, *e.g.*, Dkt. No. 366 at 20:19-22.

Further, Ms. Agne has done more to advance the class's claims than simply endure threats and invasive discovery by various defendants. She has spent a lot of her own time helping to prosecute this action. Dkt. No. 319, p. 2:14. Over the several years of this litigation, Ms. Agne has reviewed numerous documents, conferred with counsel on numerous occasions, and exchanged numerous emails with counsel about this case. *See id*., p. 2:14-17. She has helped draft several important declarations, including the declarations which substantiated class certification. *See id.*, p. 2:17-18. She also traveled from her home in Seattle to attend the first two days of mediation in San Francisco. *See id*., p. 2:19-20. And she participated in the last two days of mediation in Seattle. *See Decl. Kirby*, ¶ 5.

Ultimately, Ms. Agne spent a lot time to advance the class's claims. *See Decl. Kirby*, ¶ 5. In her profession as a Licensed Social Worker, Ms. Agne only earns money when she works. *See* Dkt. No. 319, p. 1:6-7 *and* p. 2:20-21. Thus, even ignoring her extra childcare expenses and travel costs to participate in this lawsuit, Ms. Agne "lost thousands of dollars of income as a direct consequence of [her] participation in this case." *See id*., p. 2:21-23. Accordingly, Ms. Agne endured, sacrificed, and otherwise risked much so that that the class could obtain the relief which the settlement agreement now offers.

Erin Chutich and Jerrod Chutich joined Ms. Agne as plaintiffs in July 2012. *See* Dkt. No. 281 (Fifth Amended Complaint). Mr. and Mrs. Chutich joined Ms. Agne to face the same risks

MOTIONS FOR APPROVAL OF INCENTIVE AWARDS,
ATTORNEYS' FEES, AND COSTS
(Case No. 2:10-cv-01139-JCC)
Page 3

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

that she faced and to endure the same litigation travails that the defendants had forced Mr. Agne to endure. Thus, Mr. and Mrs. Chutich also risked much by stepping forward to represent the interests of the class and to help obtain the relief which the settlement agreement now offers.

B.     **The Proposed Incentive Awards Reasonably Compensate Class Representatives**

Incentive awards are payments of money to class representatives that "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general. Awards are generally sought after a settlement or verdict has been achieved." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Incentive awards became "routine" about the turn of this century. *See* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1311 (2006) (a survey of settled class actions between 1993 and 2002). Thus now, "[i]ncentive awards are fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958.

Historically, incentive awards approved by the Ninth Circuit and otherwise by this Court typically range between $5,000 and $40,000. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (approving incentive awards of $5,000); *Pelletz v. Weyerhaeuser Co.*, 592 F.Supp.2d 1322, 1329-30 (W.D. Wash. 2009) (approving incentive awards of $7,500); *Hughes v. Microsoft Corp.*, C98-1646C, 93-0178C, 2001 WL 34089697, *12-13 (W.D. Wash. Mar. 26, 2001) (approving incentive awards of $7,500, $25,000, and $40,000). Moreover, public policy specifically justifies higher incentive awards when class representatives are subjected to conduct which is calculated to dissuade them from advancing class claims. *See Harris v. Vector Marketing Corp.*, C08-5198 EMC, 2012 WL 381202, *8 (N.D. Cal. Feb. 6, 2012) (approving a $12,500 incentive award just because a defendant "pursued disclosure of [plaintiff's] private information and subpoenaed her family and friends"); *also see Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011) (explaining the public policy against attempts to "pick off" potential class representatives in Rule 23 class action cases because such a tactic "would effectively ensure that claims that are too economically insignificant to be brought on their own

MOTIONS FOR APPROVAL OF INCENTIVE AWARDS,
ATTORNEYS' FEES, AND COSTS
(Case No. 2:10-cv-01139-JCC)
Page 4

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

would never have their day in court.").

Courts also should consider how approving incentive awards can encourage future class representatives to step forward to represent the interests of other classes. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit."). Thus, an appropriate incentive award will encourage others to step forward to help provide justice to classes of people who cannot obtain justice individually. *See* Dkt. No. 366 at 20:25 – 21:1 ("[I]n a TCPA action […] 'the class action procedure is the superior mechanism for dispute resolution in this matter. The alternative mechanism, permitting individual lawsuits for a small statutory penalty, would be costly and duplicative.'"), *quoting Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-CV-01413-W-AJB, *8 (S.D. Cal. Sept. 5, 2008).

Here, Maria Agne, Erin Chutich, and Jerrod Chutich all stepped forward to advance the interests of the class. Their collective representation of the class proved essential to obtaining the relief provided for the class in the settlement agreement. *See Decl. Kirby*, ¶ 6. Their respective efforts and the risks they assumed should be rewarded. Therefore, Plaintiffs respectfully ask the Court to approve the incentive awards provided by the settlement agreement.

## II. MOTION FOR APPROVAL OF ATTORNEY FEES AND COSTS

The Court preliminarily approved the class settlement agreement on June 14, 2013. *See* Dkt. No. 373. This class settlement provided a common fund with a total value of $16,335,000. *See* Dkt. No. 372-1, pp. 5:23 – 6:2. Of this sum, $2,450,000 is provided to compensate Class Counsel for the attorney fees and costs which they incurred to prosecute this lawsuit for the benefit of the class. *See id.*, p. 4:1-4. Plaintiffs now move the Court to approve this provision of the settlement agreement which compensates Class Counsel for the time and resources that they have expended over several years to obtain the relief preliminarily approved by the Court.

**A.      Years of Effort were Spent to Achieve the Results which now Benefit the Class**

The many hundreds of docket entries of the Court's file reflect how aggressively this case has been litigated for well over three years.

MOTIONS FOR APPROVAL OF INCENTIVE AWARDS, ATTORNEYS' FEES, AND COSTS
(Case No. 2:10-cv-01139-JCC)
Page 5

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

1. <u>Class Counsel engaged in vigorous motion practice over the pleadings.</u>

On July 14, 2010, Defendants removed the case to the United States District Court for the Western District of Washington under the Class Action Fairness Act. *See* Dkt. No. 1.  From this filing, the Parties proceeded to engage in extensive motion practice over the pleadings. *See* Dkt. No. 372 ¶ 3. This included the filing of six separate complaints, and between Papa John's and City Pizza six motions to dismiss. *See* Dkt. Nos. 14, 16, 21, 50, 54, 72, 80, 84, 120, 164, and 281. Moreover, each motion to amend was accompanied by a vigorous opposition, requiring full briefing. *See* Dkt. Nos. 47, 49, 51, 55, 140, 155, 158, 239, 258, 259, 264, and 290. Ultimately, the pleadings were finally set after the Defendants answered Plaintiffs' Fifth Amended Complaint. *See* Dkt. Nos. 328, 348, 354. Defendants contested all of Plaintiffs' causes of action.

2. <u>Class Counsel engaged in vigorous and hard fought discovery practice.</u>

Shortly after the filing of the initial complaint the parties began vigorous discovery practice.  Motions included Papa John's Motion to Stay Discovery (Dkt. No. 57), Plaintiff's Motion to Compel (Dkt. No. 81), Papa John's Cross Motion for Protective Order (Dkt. No. 97), Papa John's Motion for a Second Protection Order (Dkt. No. 142), Plaintiff's Opposition to the Second Protective Order and Request for Affirmative Production (Dkt. No. 151), Plaintiff's Second Motion to Compel (Dkt. No. 179), Papa John's Motion for Reconsideration (Dkt. No. 198), Plaintiff's Status Report on Discovery (Dkt. No. 213), Papa John's Motion to Compel (Dkt. No. 226), Plaintiff's Motion for Spoliation Sanctions (Dkt. No. 261); Defendants Motion for Sanctions and Discovery Stay (Dkt. No. 266), and ultimately Defendants' request for a Magistrate to manage the entire process (Dkt. No. 301) that was also opposed.  The Court responded with multiple Orders on discovery including an order requiring extensive electronic discovery. *See e.g.,* Dkt. Nos. 183, 203, 212, 217, 242, 339, 343, 352, 355, 356, and 367.  Over the years of this case, Class Counsel also issued dozens of third-party subpoenas to Papa John's franchises and other persons across the country, conducted third-party interviews, retained an expert and consulting witnesses, contacted multiple putative class members, and conducted depositions in both Oregon and Washington. Dkt. No. 372 ¶ 4.

MOTIONS FOR APPROVAL OF INCENTIVE AWARDS,
ATTORNEYS' FEES, AND COSTS
(Case No. 2:10-cv-01139-JCC)
Page 6

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

3. <u>Class Counsel engaged in hotly contested class certification motion practice.</u>

On February 13, 2012, Ms. Agne filed her motion for the Court to certify both a nationwide class under the TCPA as well as a Washington Sub-class under the WCPA. Dkt. No. 219. The parties again vigorously contested the motion, filing separate opposition papers (Dkt. Nos. 243, 247), reply briefs (Dkt. Nos. 304, 305), supplemental briefing, (Dkt. Nos. 330, 331, 357, 359) and supplemental authorities to such briefing (Dkt. Nos. 329, 349, 361, 364). On November 9, 2012, the Court issued a 22 page order certifying both the nationwide class and Washington subclass. *See* Dkt. No. 366 at 1. On November 23, 2012, Defendants filed a request for appeal under Rule 23(f) to the Ninth Circuit. Plaintiff Maria Agne filed her opposition on December 8, 2012. Dkt. No. 372 ¶ 5.

4. <u>Class Counsel engaged in lengthy settlement negotiations to resolve this case.</u>

Settlement negotiations in matter were as hard fought as the litigation. On March 9, 2012, the Parties notified the Court of their intention to engage in mediated settlement discussions and requested that the Court enter an order staying discovery and a ruling on class certification pending the conclusion of the mediation. Dkt. Nos. 224, 225. The Parties exchanged detailed mediation statements and hundreds of pages of documents, outlining their arguments in light of the discovery record. Dkt. No. 372 ¶ 8. The Parties then engaged in mediation on May 30-31, 2012 with the Honorable Edward A. Infante (Ret.), an experienced mediator and former Chief Magistrate Judge of the United States District Court for the Northern District of California, who has developed a national reputation as an expert on TCPA cases. *Id.* After two days of mediation the case did not resolve. The parties continued settlement discussions with the aid of Judge Infante, as well as independently, until this Court's ruling on Certification. *Id*.

Following certification, the parties again reengaged in settlement negotiations, scheduling two further days of mediation in January and February 2013 with the Honorable Terry Lukens (Ret.) with JAMS in Seattle, who is also an expert on TCPA cases as well as class actions brought under Washington State consumer protection and telemarketing statutes. Dkt. No. 372 ¶ 7. Upon completion of the fourth day of mediation the parties reached an agreement, with

MOTIONS FOR APPROVAL OF INCENTIVE AWARDS,
ATTORNEYS' FEES, AND COSTS
(Case No. 2:10-cv-01139-JCC)
Page 7

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

1  subsequent arms-length negotiations lasting into May 2013 under the supervision of Judge
2  Lukens. These negotiations produced the specific terms set forth in the settlement agreement
3  which was preliminarily approved by the Court earlier this year. *See id*.; Dkt. No. 372-1.

4  Accordingly, there is a clear record of the significant labor that Class Counsel advanced
5  on behalf the class to achieve the settlement agreement preliminarily approved by the Court.

### B. Application of the Percentage-of-the-Fund Method is Warranted

7  Federal courts long have recognized that when counsel's efforts result in the creation of a
8  common fund that benefits plaintiffs and unnamed class members, counsel have an equitable
9  right to be compensated from that fund for their successful efforts in creating it. *See, e.g., Boeing
10 Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) (the Supreme Court "has recognized consistently
11 that a litigant or a lawyer who recovers a common fund ... is entitled to a reasonable attorney's
12 fee from the fund as a whole"); *Central R.R. & Banking Co. v. Pettus,* 113 U.S. 116 (1885);
13 *Staton v. Boeing Co*., 327 F.3d 938, 967 (9th Cir. 2003; *In re Washington Public Power Supply
14 System Sec. Litig.,* 19 F.3d 1291,1300 (9th Cir. 1994) ("those who benefit in the creation of a
15 fund should share the wealth with the lawyers whose skill and effort helped create it"); *Vincent v.
16 Hughes Air West. Inc.,* 557 F.2d 759, 769 (9th Cir. 1977) ("[A] private plaintiff, or his attorney,
17 whose efforts create, discover, increase or preserve a fund to which others also have a claim is
18 entitled to recover from the fund the costs of his litigation, including attorneys' fees.").

19 The common fund doctrine rests on the understanding that attorneys should normally be
20 paid by their clients. *See Boeing,* 444 U.S. at 478. Where the attorneys and unnamed class
21 member clients have no express retainer agreement, those who benefit from the fund without
22 contributing to it would be unjustly enriched if attorneys' fees were not paid out of the common
23 fund. *See id*.; *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007). When
24 clients do not pay an ongoing hourly fee to their counsel, they typically negotiate an agreement
25 in which counsel's fee is based upon a percentage of any recovery. *See Decl. Kirby*, ¶ 7. The
26 percentage-of-the-fund approach mirrors this aspect of the market and thereby reflects the fee
27 that would have been negotiated by the class members in advance, had such negotiations been

MOTIONS FOR APPROVAL OF INCENTIVE AWARDS,
ATTORNEYS' FEES, AND COSTS
(Case No. 2:10-cv-01139-JCC)
Page 8

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

feasible, given the prospective uncertainties and anticipated risks and burdens of the litigation. *See, e.g., Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 271 (9th Cir. 1989) ("[I]t is well settled that the lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit."); *Sutton v. Bernard,* 504 F.3d 688, 692 (7th Cir. 2007) ("In deciding fee levels in common fund cases, we have consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'"); *cf. Missouri v. Jenkins by Agyei,* 491 U.S. 274, 285 (1989) (market factors should be considered in evaluating reasonableness).

For these reasons, the percentage-of-the-fund method is overwhelmingly preferred by courts. Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, 7 Journal of Empirical Legal Studies, 248-281 (June 2010) (attached at *Decl. Kirby*, Ex. 2). An empirical study based on eighteen years of published opinions on settlements in 689 common fund class action and shareholder derivative settlements in both state and federal courts found that: (1) 83 percent of cases employed the percentage-of-the-recovery method, and (2) the number of courts employing the lodestar method has declined over time, from 13.6 percent from 1993-2002 to 9.6 percent from 2003 to 2008. *Id.*, at 267-69; *accord* Fitzpatrick, Brian T., *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 Journal of Empirical Legal Studies, 24 (July 2010) (attached at *Decl. Kirby*, Ex. 3) (finding, in a similar empirical study of 688 settlements approved by federal district courts during 2006 and 2007, that 69 percent of courts employed the percentage-of-the-settlement method, 12 percent employed the lodestar method, and 20 percent did not report which method they used).

Here, the Settlement preliminarily approved by the Court establishes a $16,335,000 Settlement Fund. Because Class members have not paid Class Counsel for their efforts, equity requires that a fair and reasonable fee be paid, based on what the market would traditionally require, no less than if they had hired private counsel to litigate their cases individually. *Boeing,* 444 U.S. at 479-81.

MOTIONS FOR APPROVAL OF INCENTIVE AWARDS,
ATTORNEYS' FEES, AND COSTS
(Case No. 2:10-cv-01139-JCC)
Page 9

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

**C.    Percentage-of-the-Fund Analysis Supports Counsel's Fee Request**

The typical range of acceptable attorneys' fees in class action cases in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% being considered the "benchmark." *See Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993); *Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt* v. *Graulty,* 886 F.2d 268,272 (9th Cir. 1989). Courts frequently award fees greater than the benchmark. *See, e.g., Vizcaino,* 290 F.3d at 1049-50; *In re Mega Fin. Corp. Sec. Litig.,* 213 F 3d 454,460 (9th Cir. 2000); *Bond* v. *Ferguson Enterprises, Inc.,* 1:09-cv-1662 OWW MJS, 2011 WL 2648879, *9-11 (E.D. Cal. June 30, 2011) ("[T]he exact percentage varies depending on the facts of the case, and in 'most common fund cases, the award exceeds that benchmark.'") (citation omitted); *see also In re Activision Sec. Litig.,* 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%").

In determining whether an upward adjustment of the 25% benchmark is warranted in a common fund class action case, courts in the Ninth Circuit look to the following factors:

> (1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to the class beyond the immediate generation of a cash fund; (4) whether the percentage rate is above or below the market rate; (5) the contingent nature of the representation and the opportunity cost of bringing the suit; (6) reactions from the class; and (7) a lodestar cross-check.

*Vizcaino,* 290 F.3d at 1048-52. These factors, as discussed below, demonstrate that Class Counsel's request for $2,450,000 in attorneys' fees and costs, which is under 15 percent of the Common Fund, is reasonable under the circumstances.

1.    <u>Class Counsel obtained an excellent result for the class.</u>

In this lawsuit, the claims shared by the entire class were for statutory damages under the Telephone Consumer Protection Act ("TCPA"). *See*, *e.g.*, Dkt. No 183 at 1:20-23. TCPA statutory damages are generally considered to be punitive damages designed to deter wrongful conduct, not compensatory damages. *See, e.g., Lo v. Oxnard European Motors, LLC*, 11CV1009 JLS MDD, 2012 WL 1932283, *2 (S.D. Cal. May 29, 2012) ("the TCPA contains a punitive element to deter") (citation omitted); *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316,

MOTIONS FOR APPROVAL OF INCENTIVE AWARDS,
ATTORNEYS' FEES, AND COSTS
(Case No. 2:10-cv-01139-JCC)
Page 10

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

1321 (S.D. Fla. 2012) ("The TCPA was intended to protect individuals from unsolicited automated telemarketing calls, and to deter callers from utilizing such calls in an unregulated fashion."), *citing Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

Here, the settlement provides every class member entitlement to a transferable merchandise voucher which is good for a free, large Papa John's pizza and has $13 retail value. Also, every class member with a valid claim can obtain a further payment of $50 *in cash*. Thus, the settling defendants have agreed to make cash and voucher payments to the class totaling at least $13,860,000, exclusive of the attorney fees, costs, incentive awards, and class administration fees that the settling defendants also agreed to pay. The total Common Fund created for the benefit of the class is $16,335,000. Given these financial terms, there can be no genuine dispute that the settling defendants are being punished amply for engaging in their ill-conceived and illegal marketing practices. Moreover, the magnitude of this Common Fund, when finally approved by the Court, should provide ample deterrence to other businesses which may have otherwise considered violating the TCPA and related state laws.

2. <u>Class Counsel faced substantial risk of non-payment.</u>

Though the settlement now before the Court is substantial, there has never been any assurance of any meaningful award which could compensate either the class for their damages or Class Counsel for their attorney fees and costs. OnTime4U is a defunct business entity. *See* Dkt. No. 354 at 3 ¶ III-23. The remaining OnTime4U participants are *pro se* litigants without any demonstrable means to pay a judgment against them. *See Decl. Kirby*, ¶ 10. Similarly, the Washington Court of Appeals has ruled that none of the Rain City defendants have insurance coverage for Plaintiffs' claims. *See Oregon Mut. Ins. Co. v. Rain City Pizza, LLC*, 172 Wn. App. 1043 (2013). And so, too, the Rain City defendants have no real ability to satisfy a judgment to the class. *See* Dkt. No. 245 at 5:17-19. Thus, the only source for meaningful compensation to the class and their counsel is Papa John's.

However, since the outset of this case, Papa John's has vigorously disputed any culpability for the marketing scheme at issue in this case. *See*, *e.g.*, *Decl. Kirby*, Ex. 1. When

MOTIONS FOR APPROVAL OF INCENTIVE AWARDS,
ATTORNEYS' FEES, AND COSTS
(Case No. 2:10-cv-01139-JCC)
Page 11

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

certifying the class, the Court acknowledged that "the precise nature of Papa John's involvement in franchisee decisions to use OnTime4U services has yet to be definitively established." *See* Dkt. No. 366 at 4:21 – 5:2. Accordingly, since the outset of the case, there existed—as there now exists—a substantial risk that neither the class nor Class Counsel would obtain any compensation even if they prevailed in the class claims against the non-Papa John's defendants.

3. <u>Class Counsel's fees are below the market rate.</u>

Plaintiff's' requested attorney fees are lower than attorney fees granted in other class action settlements. Class Counsel's request is for less than 15 percent of the Common Fund. This percentage is lower than fees approved in other Ninth Circuit cases involving consumer protection claims, including TCPA and related state statute claims. *See*, *e.g.*, *Palmer v. Nigaglioni*, 508 F. App'x 658 (9th Cir. 2013) ("The district court did not abuse its discretion in approving an attorney's fees award in the sum of 28% of the gross common fund recovery."); *Bellows v. NCO Financial Systems, Inc.,* No. 07-CV-1413 W (AJB), 2009 WL 35468, *8 (S.D. Cal. Jan 5, 2009) (awarding fees and costs equal to 31.6% of the settlement fund); *Thieriot v. Celtic Ins. Co.,*C10-4462 LB 2011 WL 1522385, *5-7 (N.D. Cal., April 21, 2011) (awarding fees equal to 33 1/3% of the common fund); *Kanawi v. Bechtel Corp.,* C6-5566 CRB, 2011 WL 782244, *1-2 (N.D. Cal., March 1, 2011) (awarding fees of 30% of the Settlement Fund).

4. <u>Contingent nature of representation and opportunity costs support fee.</u>

The public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk they might be paid nothing at all for their work. *In re Wash. Pub. Power,* 19 F.3d at 1299. Because Class Counsel agreed to prosecute this case on contingency with no guarantee of ever being paid, they faced substantial risk should they proceed to trial. From the outset, prosecution of this action on behalf of the class has involved significant risk, but nonetheless Class Counsel advanced all costs of suit. In agreeing to represent the Class on a contingent basis, Class Counsel risked their own resources with no guarantee of recovery. *See Decl. Kirby*, ¶¶ 7, 11.

MOTIONS FOR APPROVAL OF INCENTIVE AWARDS, ATTORNEYS' FEES, AND COSTS
(Case No. 2:10-cv-01139-JCC)
Page 12

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

     5.    <u>Reactions from the Class support the fee.</u>

The class has been provided notice of the proposed fee award. *See Decl. Kirby*, ¶ 3. To date, there have been no objections of any type filed. *See id.*

**D.**    **A Lodestar Cross-Check Confirms the Reasonableness of the Attorney Fees**

A basic lodestar cross-check multiplies the number of hours counsel reasonably expended on the litigation by a reasonable hourly rate. *See Hanlon,* 150 F.3d at 1029. "The lodestar figure is a presumptively reasonable amount of attorney's fees." *S.E.C. v. Sunwest Mgmt., Inc.*, 11-35789, 2013 WL 1987373, *1 (9th Cir. May 15, 2013), *citing Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542 (2010).

Class Counsel and their affiliated attorneys and staff expended over 5,142.5 hours. *See Decl. Heyrich*, ¶ 7; *Decl. Kirby*, ¶¶ 14. These hours are reasonable if for no other reason than Class Counsel knew that it was possible they would never be paid for their work. Thus, counsel had no incentive to act in a manner that was anything but economical. *See Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir. 2008) ("[L]awyers are not likely to spend unnecessary time on contingency cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee."). That said, counsel took their responsibility seriously and endeavored to represent the interests of the class members to the greatest extent possible. As reflected by the hundreds of filings with the Court, this advocacy required a substantial amount of work.

The attorney fee rates requested for approval range from $425 to $595 per hour. *See Decl. Heyrich*, ¶ 7; *Decl. Kirby*, ¶ 14. These are about the median market rates for cases like this within the Western District of Washington. *See Decl. Heyrich*, ¶ 7; *Decl. Kirby*, ¶ 14; *also see Pelletz v. Weyerhaeuser Co.,* 592 F. Supp. 2d 1322, 1326 (W.D. Wash. 2009) (this Court approving hourly rates for work performed in Seattle that ranged from $415 to $760 per hour as part of 2,407.4 total hours spent over the course of litigation spanning about 1 1/2 years); *Palmer v. Spring Solutions, Inc.*, C9-1211 JLR, Dkt. No. 90 (W.D. Wash. Oct. 21, 2011) (granting motion for attorney fees as percentage of common fund where rates of Seattle attorneys ranged

MOTIONS FOR APPROVAL OF INCENTIVE AWARDS,
ATTORNEYS' FEES, AND COSTS
(Case No. 2:10-cv-01139-JCC)
Page 13

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

from $650 to $760 per hour for a case litigated about two years), *affirmed by* 508 F.App'x 658 (9th Cir. 2013).

Accordingly, multiplying the reasonable hours worked times the reasonable hourly rates provides that the base lodestar attorney fee award would be $3,001,094.[1] However, Class Counsel only seek approval for $2,450,000 in attorney fees and costs combined. Class Counsel are seeking an amount for attorneys fees and costs that is 18.2% *less than* the unmodified and presumptively reasonable lodestar award of attorney fees which they may otherwise be entitled to recover. *See Sunwest Mgmt., Inc.*, 2013 WL 1987373, *1 ("The lodestar figure is a presumptively reasonable amount of attorney's fees."). Thus, the lodestar cross-check substantiates the reasonableness of Plaintiffs' request for just under 15% of the Common Fund to be approved as compensation to Class Counsel for the attorney fees and costs they advanced to obtain the settlement which now benefits the class.

### E. The Payment of Costs is Fair and Reasonable

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement." *In re Media Vision Tech. Sec. Litig.,* 913 F. Supp. 1362, 1366 (N.D. Cal. 1996), *citing Mills* v. *Electric Auto-Lite Co.,* 396 U.S. 375, 391-392 (1970). All in all, Class Counsel worked hard to bring this case to a successful resolution in the face of a staunch defense, and the fees and costs payment provided for in the settlement is fair and reasonable.

In advancing this lawsuit, Class Counsel incurred out-of-pocket costs to date totaling $35,360. *See Decl. Heyrich*, ¶ 8; *Decl. Kirby*, ¶ 16. These out-of-pocket costs were necessary to secure the resolution of this litigation. *See In re Immune Response Sec. Litig.,* 497 F. Supp. 2d

---

[1] Once this raw lodestar figure is determined, the court may take into consideration additional factors to enhance the lodestar, if necessary, to arrive at a reasonable fee that is greater. *See Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975); *also see Vizcaino,* 290 F.3d at 1052-54 (approving multiplier of 3.65 and citing a survey of class settlements from 1996-2001 indicating that most multipliers range from 1.0 to 4.0); *Steiner v. Am. Broad. Co., 248* Fed. Appx. 780, 783 (9th Cir. 2007) (25% fee reasonable where effective multiplier was 6.85) *Hanlon,* 150 F.3d at 1029; *Ballen v. City of Redmond,* 466 F.3d 736, 746 (9th Cir. 2006). However, no adjustment is necessary because the unmodified lodestar is significantly larger than attorney fees and costs requested. The attorney fees and costs requested represent a multiplier of less than 0.82 of an unmodified lodestar fee.

MOTIONS FOR APPROVAL OF INCENTIVE AWARDS, ATTORNEYS' FEES, AND COSTS
(Case No. 2:10-cv-01139-JCC)
Page 14

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

1166, 1177-1178 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in a class action litigation).

     The class was provided notice that Class Counsel would seek a combined award of fees and costs no greater than $2,450,000. In light of the expenses Class Counsel has had to incur to bring this case to its current settlement posture, Class Counsel's request for a total award of $2,450,000, which includes $35,360 in costs, is reasonable.

RESPECTFULLY SUBMITTED:  August 9, 2013

*/s/ Albert H. Kirby*
Albert H. Kirby, WSBA #40187
**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
Tel: (206) 414-9950
Fax: (866) 845-6302
Email: ahkirby@kirby-legal.com

Donald W. Heyrich, WSBA #23091
**HEYRICH KALISH MCGUIGAN PLLC**
1325 Fourth Avenue, Suite 540
Seattle, WA  98101
Tel: (206) 838-2504
Fax: (206) 838-2505
Email: dheyrich@hkm.com

Class Counsel

MOTIONS FOR APPROVAL OF INCENTIVE AWARDS,
ATTORNEYS' FEES, AND COSTS
(Case No. 2:10-cv-01139-JCC)
Page 15

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

**CERTIFICATE OF SERVICE**

I, the undersigned, certify that, on this date, a true copy of the foregoing document will be or has been served on the persons listed below in the manner shown:

| | |
|---|---|
| Joseph P. Lawrence<br>Joan L. Roth<br>LAWRENCE & VERSNEL, PLLC<br>4120 Columbia Center<br>701 Fifth Avenue<br>Seattle, WA  98104 | ___ Legal Messenger<br>___ Facsimile<br>___ United States Mail, First Class<br>___ Direct Email<br>_x_ CM/ECF Notification |
| James Howard<br>Jessica M. Andrade<br>DORSEY & WHITNEY LLP<br>701 Fifth Avenue, Suite 6100<br>Seattle, WA  98104 | ___ Legal Messenger<br>___ Facsimile<br>___ United States Mail, First Class<br>___ Direct Email<br>_x_ CM/ECF Notification |
| Robert Wisnovsky<br>270 Wells Fargo Dr.<br>Jacksonville, OR 97530<br>Email: rwisnovsky@aol.com | ___ Legal Messenger<br>___ Facsimile<br>___ United States Mail, First Class<br>_x_ Direct Email<br>___ CM/ECF Notification |
| John S. George<br>P.O. Box 375<br>Jacksonville, OR 97530<br>Email: jnbgeorge@gmail.com | ___ Legal Messenger<br>___ Facsimile<br>___ United States Mail, First Class<br>_x_ Direct Email<br>___ CM/ECF Notification |

Dated: August 9, 2013

*/s/ Albert H. Kirby*
Albert H. Kirby, WSBA #40187

MOTIONS FOR APPROVAL OF INCENTIVE AWARDS,
ATTORNEYS' FEES, AND COSTS
(Case No. 2:10-cv-01139-JCC)
Page 16

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950